**Henry A. McDANIEL, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 67–C–24–L.**

United States District Court
W. D. Virginia,
Lynchburg Division.

June 12, 1968.
Supplemental Memorandum of Opinion
Aug. 2, 1968.

J. Frank Shepherd, Lynchburg, Va., and William O. Roberts, Jr., Lexington, Va., for plaintiff.

Thomas B. Mason, U. S. Atty., and James P. Brice, Asst. U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OF OPINION

BARKSDALE, District Judge.

Henry A. McDaniel of Natural Bridge, Virginia, has instituted this action pursuant to Section 205(g) of the Social Security Act to review the final decision of the Secretary of Health, Education and Welfare, denying his application for disability insurance benefits. The case is now before the court on motions for summary judgment filed on behalf of both the plaintiff and the defendant. Plaintiff filed his first application on August 15, 1961, and his case has been under consideration by the Administration or in Court ever since. It is unnecessary to recite in detail the entire history of the case. Suffice it to say that the application now under review was filed on October 15, 1963, for disability insurance benefits and to establish a period of disability. This application was denied at all administrative levels, and the plaintiff instituted an action in this court on February 15, 1966, for judicial review. While the litigation was pending, claimant's attorney requested the Administration to reopen its decision on the ground that additional evidence, which reflected on the claimant's condition during the period in issue, was then available. By agreement, that action was dismissed with leave to reinstate. The Appeals Council of the Administration reopened the administrative denial of claimant's application of October 15, 1963, and took further evidence. On the basis of the new evidence the Appeals Council found that the claimant must now establish that he was under a disability within the meaning of the Act on or before September 30, 1966. Upon consideration of the entire record, the Appeals Council found, on June 12, 1967, that the claimant was not entitled to a period of disability or to disability insurance benefits, and this action was timely instituted on July 22, 1967.

Plaintiff, Henry A. McDaniel, who has a seventh grade education, is now forty three years of age, is married, and has three dependent children. During his service in World War II, he was a hospital attendant, and following his discharge from the Army he has been employed as a laborer in a paper mill, a truck driver, and a cab driver, and has been employed by a used car dealer as a salesman on a commission basis. He has been receiving nonservice connected disability payments from the Veterans Bureau since February 1962, which now amount to $110.00 per month. He quit his last regular employment as a cab driver on April 22, 1961, because, as he put it, he was suffering chest pains and suddenly "passed out" in the office. Two days after passing out and quitting his job, McDaniel was sent to the Veterans' Hospital at Salem, and remained there ten days. On July 10, 1961, he was sent by Dr. McClung of Glasgow to the McGuire Veterans' Hospital in Richmond. In his report of July 31, 1961, Dr. R. Rives Bailey of the McGuire Hospital, as a part of his final diagnosis of McDaniel, said, "Probable arteriosclerotic heart disease with angina", and prescribed nitroglycerine tablets for the relief of pain. McDaniel has found it necessary to continue to take these tablets. On November 27, 1961, Dr. A. W. Pleasants of Lexington, Virginia, reported as his diagnosis, "Arteriosclerotic Heart Disease with angina." Following his return from the McGuire Hospital, McDaniel undertook to work as a used car salesman and truck driver, but his earnings were very small.

McDaniel suffered an acute heart attack on June 6, 1966. He described this attack as coming on suddenly and mani-

fested by a feeling of numbness from his waist upward and into his arm. This was accompanied by nausea and, then, he apparently lost consciousness. He was carried to the Veterans' Hospital in Salem by a Life Saving Crew and the next thing he remembered was waking up in the hospital three days later. McDaniel remained under treatment at the Veterans' Hospital from June 6th, until July 8th, 1966. In his letter of September 23, 1966, Dr. Walter Buckner, Chief of Medical Service at the Veterans' Hospital, said (p. 292):

"Mr. Henry A. McDaniel of Natural Bridge, Virginia, has been under my medical care several times at this hospital since 1952, under treatment for several different conditions. The conditions for which he was treated are described in the Discharge Summaries following each of these admissions. "In October 1964 he was having symptoms typical of angina pectoris due to coronary insufficiency, but electrocardiograms were within normal limits and the diagnosis of Coronary Artery Disease could not be made on the basis of any objective findings.

"He was hospitalized again in January 1966 for treatment of a Duodenal Ulcer which was first diagnosed here in 1959. At that time it was noted that he was also having symptoms consistent with angina pectoris and coronary insufficiency. Again the electrocardiogram was normal.

"In June 1966 he was admitted to the Medical Service again, and this time he was found to have an acute myocardial infarction with typical electrocardiographic findings. He was hospitalized from June 6, 1966 to July 8, 1966.

"In retrospect, I have no hesitation in expressing my opinion that the symptoms of chest pain relieved by Nitroglycerine which were first brought to my attention in October 1964 when he was hospitalized, were due to insufficiency of his coronary artery circulation due to atherosclerosis and narrowing of one or both coronary arteries. This condition of coronary insufficiency can be present and produce symptoms without definite electrocardiographic evidence of disease, and I believe this to have been true in Mr. McDaniel's case."

Further, in concluding his official report, Dr. Buckner said:

"In comment on this case, it seems evident that this patient has had coronary insufficiency and typical symptoms of angina pectoris for a number of years before finally suffering an acute coronary occlusion and myocardial infarction. He is considered to be incapacitated for any work."

By his letter of January 12, 1967, Dr. Buckner replied to a request for comments by the District Manager of the Department of Health, Education and Welfare, as follows:

"All the medical information I have on this patient, and my opinion that he is incapacitated for any strenuous exertion of any sort can be found in the Complete Medical Summary which is available. This summary can be obtained on the patient's request."

The latest medical examination and report was made at the request of the Administration by Dr. Homer A. Sieber of the Roanoke Valley Medical Clinic (p. 317). In his letter of April 27, 1967, Dr. Sieber said:

"The next question concerns functional limitations imposed on the claimant for various types of activity. His functional disabilities and limitations seem to be mostly subjective and, except for his obesity which would naturally slow him now, I can find no objective reason for limiting normal physical activity. *Naturally, anyone who has suffered one coronary occlusion should avoid all strenuous exertion.* (Italics mine).

"Recommendations that I would have to improve his function would involve weight reduction and continued strong reassurance and encouragement by his physician. I believe, however,

that this patient is beyond the help of any rehabilitation since he has not worked for six years and he now has proof of heart disease and all of the chest discomfort which he has experienced since 1961, in his mind, represents a manifestation of this.

"It is my opinion that this patient is quite capable to perform sedentary, light, and even moderate, activity on a regular employment basis but, as noted above, I do not believe he will ever be rehabilitated for the reasons given."

Dr. Cook, a Counselling Psychologist and Vocational Guidance Counsellor, using the Dictionary of Occupational Titles, testified at length. In brief, he testified that, in the area where McDaniel lives, the Roanoke area, Southwestern Virginia, or Southwest Virginia, employment was available in industry within the capacities of McDaniel, as a cab driver, truck driver, fork lift operator, electric tractor operator, electric truck operator, etc. Of course, he admitted that any of these jobs would require McDaniel's presence and activity for a full eight-hour shift, and was entirely evasive when asked,

"Do you think that he would be a reliable operator if the management knew that he took nitroglycerine tablets and was dizzy for a short time afterwards to the extent that he didn't drive a car? Would you call that employable?"

Specifically, his answer was:

"I am not certain as to the severity of this dizziness or how much it does affect his psychomotor function, if there is any significant, I mean significant reaction and reduction time of these things—this is not established at all."

As a matter of fact, McDaniel testified that, when he took a nitroglycerine tablet, which he was required to do several times every day for chest pain, it made him feel like his hair was standing straight up on his head, that he was somewhat dizzy, that he was told not to drive a car after he had taken a tablet, and that he did not drive after taking a tablet for something like a half an hour.

Upon the entire record, it is my conclusion that Henry A. McDaniel has been, and will be, unable to perform any substantial gainful activity by reason of medically determinable physical impairments of a permanent nature, and the record being barren of any substantial evidence to the contrary, an order will be entered directing the Secretary of Health, Education and Welfare to establish the period of disability and grant the disability insurance benefits to which he would have been entitled had his application of October 15, 1963 been approved.

However, plaintiff's counsel have prayed for the allowance of an attorney's fee, and they are entitled under the law to such a fee not in excess of twenty five percent of the total of the past-due benefits to which the claimant is entitled. I do not at this time feel qualified to fix such a fee, because I am entirely without knowledge of the time and effort spent in their representation of the plaintiff in this case, as well as the amount of past-due benefits to which the plaintiff is entitled. Consequently, I will defer the entry of a final order herein until counsel for the plaintiff supply me with a memorandum as to the time and effort they have spent in their representation of the plaintiff in this case and defendant's counsel supplies me with a memorandum of the amount of past-due benefits to which the plaintiff may be entitled by reason of the judgment which I propose to enter.

Copies hereof will be mailed to all counsel of record.

### SUPPLEMENTAL MEMORANDUM OF OPINION.

Since the entry of the judgment order of June 27, 1968, in this cause, and pursuant thereto, counsel for plaintiff have, on July 2, 1968, filed their petition for the allowance of attorneys' fees for their

services rendered in the two actions instituted in this court, and their supplemental petition of July 29, 1968, and the defendant, by counsel, has supplied the court with certain desired information by letters of July 8, 1968 and July 24, 1968.

From these documents, it now appears that plaintiff, McDaniel, has been endeavoring to obtain social security benefits for almost seven years. His first application was filed August 15, 1961, and has been under consideration by the Secretary or this Court ever since. His application was denied initially on January 5, 1962. Thereafter, a Hearing Examiner denied his claim, and on May 15, 1963, the Appeals Council denied his request for a review. McDaniel filed another application on October 15, 1963. This application, as was the first, was denied at all administrative levels, and he began an action in this court on February 15, 1966, for judicial review. While this litigation was pending, plaintiff's attorneys requested the Secretary to reopen his decision on the ground that additional evidence should be heard. By agreement of both parties, that action was dismissed by an agreed order on November 28, 1966. After considering further evidence, plaintiff's application was again denied, which decision became final on June 12, 1967, and this action was instituted on July 22, 1967.

William O. Roberts, Jr., attorney of Lexington, was employed by McDaniel over three and a half years ago, and since his employment has spent over 110 work hours in interviews with McDaniel and his family, legal research, interviews with witnesses, consultation and travel, two trips to Roanoke, one to Lynchburg, hearings before two Hearing Examiners, and time spent in this court. J. Frank Shepherd, attorney of Lynchburg, was first associated in this case on February 14, 1968, and has spent a total of 65 work hours in the proceedings in this court and in administrative proceedings. His time was spent in activities similar to those of Mr. Roberts, and they have incurred expenses of $39.00.

It does not appear that any contract for legal services was entered into by McDaniel and his attorneys, but obviously any payment of counsel fees to them was contingent upon a successful recovery, because McDaniel has never been financially able to pay legal fees.

In counsel's supplemental petition, filed on July 29, 1968, they "pray that the Court consider so much of their services in the representation of the plaintiff in the proceedings before the Secretary as the Court may see fit, as preparation for the two actions instituted and prosecuted in this Court, and if the Court should see fit to follow this suggestion and grant this request, both counsel for the plaintiff hereby stipulate that no petition on their behalf will be filed for an allowance of attorneys' fees for their legal services in the proceedings before the Secretary."

■■ It appears from the two letters above referred to from counsel for the defendant that direct payment for legal services rendered by counsel in the proceedings before the Secretary may only be paid by order of the Secretary upon the petition of counsel and that the amount of past-due benefits payable to McDaniel and his family pursuant to the judgment of this Court of June 27, 1968, now aggregate $9,118.00. Although I have no power to directly allow attorneys' fees for services rendered in the administrative proceedings, I see no reason why I should not consider a substantial part of such services as preparation for the conduct of the two actions instituted and conducted by them in this court. In consideration of the stipulation by both counsel for the plaintiff that, should I consider so much of their services in the representation of the plaintiff in the administrative proceedings as I may see fit, they will file no petition for an allowance by the Secretary of attorneys' fees for their legal services in the administrative proceedings, I will consider a substantial part of their time and effort spent in the administrative proceedings as preparation

for the conduct of the two actions instituted and conducted by them in this court, as well as their legal services rendered in the institution and conduct of the two cases in this court. On this basis, it is my conclusion that 20 percentum of $9,118.00, the total of the accrued benefits due plaintiff and his family, is a fair fee to be paid to plaintiff's two attorneys for their legal services rendered in this court, which 20 percentum amounts to $1,823.60.

An order will be entered carrying out this conclusion.