**BUCKEYE CABLEVISION, INC.,**
Petitioner,

v.

**UNITED STATES** of America and Federal Communications Commission,
Respondents,
D. H. Overmyer Telecasting Company,
Inc., Intervenor.

No. 20152.

United States Court of Appeals,
Sixth Circuit.

Feb. 23, 1971.

John D. Matthews, Washington, D. C., for petitioner; James L. Kelley, Dow, Lohnes & Albertson, Washington, D. C., on brief.

Stuart F. Feldstein, Counsel, F. C. C., Washington, D. C., for respondents; Henry Geller, Gen. Counsel, John H. Conlin, Associate General Counsel, F. C. C., Washington, D. C., Richard W. McLaren, Asst. Atty. Gen., George B. Hovendon, Atty., Dept. of Justice, Washington, D. C., on brief.

Herbert M. Schulkind, Washington, D. C., for intervenor; Howard Jay Braun, Fly, Shuebruk, Blume & Gaguine, Washington, D. C., on brief.

Before: EDWARDS, CELEBREZZE and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

Petitioner, Buckeye Cablevision, Inc., seeks review of an order issued by the Federal Communications Commission on December 2, 1969. The order denied reconsideration of an earlier Commission order (December 24, 1968) which interpreted a December, 1967 *pro tem* ruling as prohibiting Buckeye from providing television signals of stations in the Detroit-Windsor area to new subscribers on Buckeye's Community Antenna Television (CATV) system in Toledo, Ohio, from feeder or distribution cables not in operation by February 2, 1968. Jurisdiction is based upon 28 U.S.C. § 1342(1), 47 U.S.C. § 402(a) and the procedures and scope of review are governed by 5 U.S.C. § 701–706. A synopsis of the facts out of which this controversy arose will expedite the consideration of the issues presented.

Since 1960 the Federal Communications Commission has gradually asserted regulatory jurisdiction over CATV systems, First Report and Order, 38 F.C.C. 683, and has made it known that its jurisdiction would cover systems which employed microwave radio or cable, Notice of Inquiry and Notice of Proposed Rule Making, 1 F.C.C.2d 453. See also, United States v. Southwestern Cable Company, 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1967). In 1966 the Commission, again asserting regulatory jurisdiction, promulgated certain rules respecting CATV operations. Second Report and Order, 2 F.C.C.2d 725.

The Commission, concerned that CATV importation of signals into major television markets posed a threat to the development of Ultra High Frequency (UHF) broadcasting in those markets, restricted CATV systems from importing into the Grade A contour area of a television station in the nation's one hundred largest television markets signals of outside stations, where the signals of those stations being imported extended beyond their Grade B contours.

47 C.F.R. § 74.1107(a). [The Grade A contour area of a television station is the theoretical area in which a good picture may be expected ninety percent of the time at the best seventy percent receiver locations at the outer limits of the service area. The Grade B contour area is one in which a good picture may be expected ninety percent of the time at fifty percent of the locations. Clarksburg Publishing Company v. Federal Communications Commission, 96 U.S. App.D.C. 211, 225 F.2d 511, 515–516 (1955). The technical definitions of Grade A and B contour areas appear at 47 C.F.R. § 73.683(a).] Individual hearing procedures were provided when a waiver of this rule was sought because importation "would be consistent with the public interest." See 47 C.F.R. § 74.1109. Another situation left to this type of individual or case-by-case treatment (under 47 C.F.R. § 74.1109) was where two major markets (such as Baltimore and Washington, D.C., San Diego and Los Angeles or Toledo and Detroit-Windsor) were so located that a CATV system bringing signals from one to the other did not come within the general hearing requirements of Section 74.-1109(a) because the Grade B contour signals of the imported station already unassistedly reached some part of the other market. These hearings, known as "footnote 69 hearings," were concerned with the possibility of adversely affecting television viewing habits of people in the closely situated cities and the ramifications this might have on the free development of independent UHF television stations.

On December 13, 1968, the Commission announced rule making proceedings to formulate new industry-wide CATV rules. Notice of Proposed Rule Making and Notice of Inquiry, 15 F.C.C.2d 417. At that time it proposed certain new rules, one of which was a codification of the "footnote 69" hearing situation. This proposed codification (§ 74.-1107(c)) provided that a CATV system operating in a community located entirely within a thirty-five mile radius of a television station in one of the top one hundred markets would be prohibited from carrying Grade B or stronger contour signals of a television station in another major market, unless the community serviced by the CATV system was also entirely located within a thirty-five mile radius of the station whose signals were to be imported. Coincident with announcing these rule making proceedings, the Commission also announced "Interim Procedures" to cover CATV operations when a conflict arose between present rules and the proposed rules during the rule making proceedings. Part of these "Interim Procedures" was to halt all major market CATV hearings in process, including "footnote 69" hearings, until completion of the rule making proceedings. 15 F.C.C.2d at 437–38.

One such "footnote 69" hearing affected by this freeze involved petitioner Buckeye Cablevision, Inc. and its attempt to increase the amount of cable carrying Detroit-Windsor signals to its subscribers in Toledo. Intervenor D. H. Overmyer Telecasting Company, Inc., a licensee of a UHF television station in Toledo, objected to Buckeye's proposed extension of services and filed petitions in April and August, 1966, requesting temporary and permanent relief to prevent Buckeye's proposed expansion as allegedly not in the public interest. A full evidentiary hearing was to be held, and on December 19, 1967, the Commission granted intervenor Overmyer temporary relief in the form of an order requiring Buckeye to limit its carriage of Detroit and Windsor signals "to areas where feeder cable is located as of the date of [the] order." Buckeye filed a petition for review of this order in this Court, but a stay of review was granted pending the Supreme Court decision in United States v. Southwestern Cable Co., *supra*. Following that decision, on July 30, 1968, Buckeye's pending petition for review was dismissed by agreement of the parties.

Two months following the mutually agreed upon dismissal of Buckeye's petition for review, intervenor Overmyer re-

quested the Commission for a show cause order alleging that Buckeye was acting in violation of the Commission's December, 1967, order by having added substantial feeder cable carrying Detroit-Windsor signals to Toledo. Buckeye conceded adding the cable but argued that the Commission's December order did not prohibit adding cable so long as it was within the area already serviced by cable laid as of February 2, 1968. After additional administrative procedures and orders, the Commission on December 2, 1969, released an order which ruled adversely to Buckeye's contentions. In essence, the December 2, 1969 order held that the December, 1967 order, while not preventing Buckeye from adding new subscribers to cables already in existence as of February 2, 1968, did prohibit the laying of new cable even in those areas serviced by previously existing cable. Because of the December 13, 1968 freeze halting all hearings, the full evidentiary hearing on Buckeye's petition to add more cable carrying Detroit-Windsor signals to Toledo was never completed. This appeal arises from the Commission's earlier grant of temporary relief to intervenor Overmyer (December, 1967) and the Commission's subsequent (December, 1969) interpretation of this temporary order.

Buckeye raises two principal issues for review. First, that the Commission's "Interim Procedures" respecting CATV operations are invalid since they were adopted in violation of the requirements of Section 4 of the Administrative Procedure Act (5 U.S.C. § 553). Second, that the Commission's handling of Buckeye's original petition to increase the amount of cable bringing Detroit-Windsor signals to subscribers in Toledo denied Buckeye property rights without due process of law. Before reaching these questions, the Commission's challenge to this Court's power to review the issues raised by Buckeye must be determined.

The Commission maintains that the only aspect of this case which can be reviewed is its orders of December 24, 1968, and December 2, 1969, which define the areas Buckeye may service. Accordingly, it is argued that consideration of the validity of the "Interim Procedure" and Buckeye's due process challenge to the Commission's action on its original petition arise from orders which are "final and no longer subject to review." The Commission contends that this Court has jurisdiction to review only final orders of administrative agencies timely appealed and the scope of the review is limited to the subject matter of those properly appealed final orders. 28 U.S.C. § 1342. It is also argued that 47 U.S.C. § 405 prohibits review of "questions of fact or law" not raised before the Commission and, therefore, review by this Court is restricted to the December, 1968 and 1969 orders.

We conclude that this Court does have jurisdiction to consider the issues raised by Buckeye on this appeal. First, challenges to administrative substantive and procedural rules would most logically be raised by immediate appeal from the adoption of those rules. However, failing an immediate appeal does not foreclose raising the issue of the validity of the adoption of these administrative rules in an enforcement proceeding which directly involves the question of the validity of the adoption of the rules. *Sub silentio*: Bucks County Cable Television, Inc. v. Federal Communications Commission, 427 F.2d 438 (3rd Cir. 1970); Kessler v. United States Federal Communications Commission, 117 U.S.App.D.C. 130, 326 F.2d 673 (1963). The Commission's argument based on 47 U.S.C. § 405 must also be rejected. The Commission has had an opportunity to consider the identical issues in this case but which were raised by other parties, see Memorandum Opinion and Order, 16 R.R.2d 1517 (1969), and it was not necessary for Buckeye to raise them again before the Commission. Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946); Gerico In-

vestment Company v. Federal Communications Commission, 99 U.S.App.D.C. 379, 240 F.2d 410 (1957). Furthermore, the issue of the validity of the adoption of "Interim Procedures" as viewed in light of the requirements of the Administrative Procedure Act does not necessitate the development of facts by the Commission, but rather presents a simple legal issue. Since we have jurisdiction to review the issues raised by Buckeye, it is concluded, for reasons hereafter stated, that Buckeye has not shown that the Commission's adoption of the "Interim Procedures" violates the Administrative Procedure Act or that Buckeye's substantive or procedural due process rights have been infringed upon by the Commission's handling of this matter.

Buckeye's first contention is that the Commission's "Interim Procedures" were adopted without notice or hearing as required by 5 U.S.C. § 553 [1] and are, therefore, invalid. Buckeye argues that the Commission's "proposed" rules, (the codification of the "footnote 69" situation is specifically drawn into question) are really already in effect by the freezing of hearings and the Commission's policy of not processing petitions unless the proposed service is consistent with the proposed rules. Thus, Buckeye argues that under the present rules it would be free to proceed without Commission authority to import, via adding feeder cable and new subscribers, additional Detroit-Windsor signals to Toledo. However, it does not meet the thirty-five mile radius requirement of the proposed rule, and it is prevented from proceeding under the present rule because of the freeze order. Because of this situation, Buckeye maintains that for all practical purposes the proposed rules are in effect. The Commission counters by arguing that the "Interim Procedures" including the freeze provisions are procedural rules properly adopted since they are an exception to the requirements of 5 U.S.C. § 553, and that the present and not the proposed CATV rules are still in force.

The same general type of argument as advanced by Buckeye was made under a similar situation in Kessler v. Federal Communications Commission, 117 U.S. App.D.C. 130, 326 F.2d 673 (1963) and resolved adversely to Buckeye's present contention. The *Kessler* case involved

---

1. Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, provides in pertinent part that:

"(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

. "(1) a statement of the time, place, and nature of public rule making proceedings;

"(2) reference to the legal authority under which the rule is proposed; and

"(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. Except when notice or hearing is required by statute, this subsection does not apply—

"(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

"(B) when the agency for good cause finds (and incorporates the findings and a brief statement of reasons therefore in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

"(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

"(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

"(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

"(2) interpretative rules and statement of policy; or

"(3) as otherwise provided by the agency for good cause found and published with the rule."

an F.C.C. selective freeze on applications for radio broadcasting licenses not consistent with certain proposed rules pending completion of rule making proceedings. Many of the same factors existing in the radio broadcasting field which warranted new industry wide rules in 1962 are present in the CATV industry today. That is, CATV, like radio broadcasting in the period discussed in *Kessler*, has experienced a remarkable growth characterized by a proliferation of CATV systems. This expansion has been earmarked by piecemeal treatment of individual claims under outmoded rules which often produced results not consistent with stated uniform public policy.

█ We find that the facts surrounding the nature of the "Interim Procedures" in the present dispute fall within the basis for the holding in *Kessler* and that decision controls. A particularly appropriate description of the "Interim Procedures" involved in this controversy can be found in *Kessler*, wherein it states:

> "We think the essential purpose and effect of the freeze order was not to create new rules, but to provide an effective interim procedure * * * pending conclusion of the rule making proceedings."

Accordingly, it is concluded that the "Interim Procedures" involved in this case are procedural rules designed to facilitate the Commission's task in promulgating new substantive rules for the CATV industry and compliance with 5 U.S.C. § 553(b) was not necessary. (See also, the interpretation in Kessler of Harvey Radio Laboratories, Inc. v.

United States, 110 U.S.App.D.C. 81, 289 F.2d 458 (1961) which involved a freeze on pending applications for certain television licenses, as holding that:

> "[T]he Commission may validly impose, without prior notice and a Section 4 hearing, freezes on the consideration and granting of applications already on file pending completion of proceedings to make new rules. * * *")

The second issue Buckeye raises is that it has been denied property rights without due process of law as guaranteed by the Fifth Amendment to the Constitution.[2] Buckeye's due process argument is not entirely clear. At one point it is contended that the temporary order of December 19, 1967, prohibiting expansion of Buckeye's system denied Buckeye the evidentiary hearing provided by Commission rules, see, 47 C.F.R. § 74.1109, and therefore violates due process of law protection. At still another point it is argued that it is the freeze order which keeps the temporary order in force and since, as Buckeye maintains, it was adopted illegally, it is denying Buckeye the hearing. It appears from the facts that Buckeye's evidentiary hearing was at least begun but was halted by the freeze order. However, treating Buckeye's argument as directed against the temporary order, it is clear that it did not deny Buckeye a hearing in violation of due process of law. See United States v. Southwestern Cable Company, 392 U.S. 157, 178–181, 88 S.Ct. 1994, 2007, 20 L.Ed.2d 1001 (1968); Bucks County Cable Television, Inc. v. Federal Communications Commission, 427 F.2d 438, 443 (3rd Cir. 1970).

---

**2.** Buckeye also challenges the Commission's actions as "arbitrary and capricious * * * in violation of the administrative due process guarantees secured by Section 10(e) of the Administrative Procedure Act." Section 10(e) of the Administrative Procedure Act (5 U.S.C. § 706) prescribes the scope of review and remedies available to courts in dealing with administrative agency conduct and does not bestow any substantive rights upon parties to administrative action. While 5 U.S.C. § 706 does not create any substantive rights, the standards for review therein described are also rights parties have before administrative agencies by virtue of the more inclusive due process provisions of the Fifth Amendment to the Constitution.

In the *Southwestern Cable* case, the Supreme Court said:

"The Commission has acknowledged that, in this area of rapid and significant change, there may be situations in which its generalized regulations are inadequate, and special or additional forms of relief are imperative. It has found that the present case may prove to be such a situation, and that the public interest demands 'interim relief * * * limiting further expansion,' pending hearings to determine appropriate Commission action. Such orders do not exceed the Commission's authority. This Court has recognized that 'the administrative process [must] possess sufficient flexibility to adjust itself' to the 'dynamic aspects of radio transmission,' F.C.C. v. Pottsville Broadcasting Co., *supra*, [309 U. S. 134, 60 S.Ct. 437, 84 L.Ed. 656] at 138, [60 S.Ct. at 439] and that it was precisely for that reason that Congress declined to 'stereotyp[e] the powers of the Commission to specific details * * *.' National Broadcasting Co. v. United States, [319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344] *supra*, at 219, [63 S.Ct. at 1011]. And compare American Trucking Assns. v. United States, 344 U.S. 298, 311, [73 S.Ct. 307, 97 L.Ed. 337]; R. A. Holman & Co. v. S. E. C., 112 U.S.App.D.C. 43, 47–48, 299 F.2d 127, 131–132. Thus, the Commission has been explicitly authorized to issue 'such orders, not inconsistent with this [Act], as may be necessary in the execution of its functions.' 47 U.S.C. § 154(i). See also 47 U.S.C. § 303(r). In these circumstances, we hold that the Commission's order limiting further expansion of respondents' service pending appropriate hearings did not exceed or abuse its authority under the Communications Act. And there is no claim that its procedure in this respect is in any way constitutionally infirm."

■ In addition, the legally adopted freeze order was necessary and reasonable in light of the initiation of the rule making proceedings to provide an effective procedure consistent with due process for the making of the new rules, to prevent frustration of stated national policies and, as in this case, to minimize the potential for conflict between applications for expansion filed under the present rules but to be governed ultimately by the proposed rules. It cannot be said that the freeze order denied Buckeye due process of law.

■ The last due process challenge raised by Buckeye is that the Commission has unreasonably delayed acting on its expansion petition. The two and one half years that have passed since the petition was originally filed is, of course, an unfortunate delay. However, the complexity of the problems resulting from the rapid growth of CATV systems, and the need to sacrifice piecemeal consideration for a uniform regulatory system of the CATV industry, does not make this delay unreasonable. Harvey Radio Laboratories, Inc. v. United States (Federal Communications Commission), 110 U.S.App.D.C. 81, 289 F.2d 458, 460 (1961).

The orders of the Commission under review are affirmed.