Glendal B. WEBB, Plaintiff-Appellee,

v.

Elliot L. RICHARDSON, Defendant-Appellant.

No. 71–2010.

United States Court of Appeals, Sixth Circuit.

Dec. 20, 1972.

James L. Kelley, Office of Legal Counsel, Dept. of Justice, Washington, D. C., for appellant; L. Patrick Gray, Asst. Atty. Gen., Eugene E. Siler, U. S. Atty., Kathryn H. Baldwin, Atty., Department of Justice, Washington, D. C., on brief.

Henry R. Wilhoit, Jr., Grayson, Ky., for appellee.

Before EDWARDS, McCREE, and KENT, Circuit Judges.

McCREE, Circuit Judge.

The Secretary appeals from the allowance of attorney fees to a claimant's attorney in the amount of 25% of accrued benefits awarded at the direction of the District Court. We agree with the Secretary that the fee fixed by the court was not reasonable in the circumstances of this case, and we remand for reconsideration.

Claimant first applied for disability benefits in 1961. This application was denied by the Social Security Administration and judicial review was not sought. In February 1965, claimant filed a second application, which was denied through the first two levels of the administrative process. Claimant then retained attorney William C. Kibbey to represent him. Mr. Kibbey represented claimant at a hearing in September 1965 and in a subsequent appeal to the Appeals Council, which affirmed the hearing examiner's denial of benefits.

Mr. Kibbey then filed a complaint in federal court in July 1966, pursuant to 42 U.S.C. § 405(g), seeking review of the administrative action. The Secretary

filed an answer and a motion for summary judgment. Kibbey filed a brief in opposition to the motion, and the Secretary then filed a reply brief in March 1967. In April 1967, the District Court, *sua sponte*, entered an order continuing indefinitely this case and twenty-one other Social Security cases, and the court renewed this order approximately every six months for the next three and one-half years. In January 1971, the court denied the Secretary's motion for summary judgment and remanded the case to the Secretary with directions to enter an award of benefits retroactive to February 1964. The Secretary did not appeal that decision.

In March 1971, Mr. Kibbey moved the District Court to allow him a fee of 25% of the total award. Attached to the motion was a contingent-fee agreement under which the claimant agreed to pay Kibbey 25% of all benefits awarded, a statement signed by the claimant that the fee sought was fair and reasonable, and a statement of Mr. Kibbey in which he supported his request on the ground, *inter alia*, that he was counsel in numerous other recent Social Security cases in which the Secretary's denial of benefits had been affirmed, with the consequence that he recovered nothing for his efforts. Mr. Kibbey's statement also included a general description of what he had done on behalf of the claimant, and averred that his representation of the claimant at the higher administrative levels and in court "required extensive study of the medical evidence and review of the applicable law." No itemization of time was provided.

The court postponed decision on the motion until the Secretary should have calculated the amount of the benefits due claimant. Following the determination that the award amounted to $19,273.60, Kibbey moved to be allowed a fee in the amount of $4,818.37, one-fourth of the total award. Filed with Kibbey's motion was the affidavit of a former member of the local county bar association minimum fee committee who opined that the fee sought was fair and reason-able. The Secretary filed a response to the motion in which he opposed allowing 25% of the total award because approximately 40% of the award had accumulated during the four-year delay between the time of the filing of the last brief and the rendering of judgment, because Kibbey had not itemized the time spent on research and preparation of the pleadings and brief, and because there were no complex factual or legal issues involved in the case.

On June 29, 1971, the District Court entered an order granting Kibbey's motion for a fee of 25% of the total award. The court gave no reasons for its action and did not find specifically that the amount claimed was "reasonable." The Secretary has appealed this order.

The authority for the fixing of the attorney fee by the District Court is provided in section 206(b) of the Social Security Act, 42 U.S.C. § 406(b) which reads, in pertinent part:

> (b)(1) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . . In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

The Secretary claims that the fee awarded in this case was not "reasonable" within the meaning of section 206 (b). We agree, but not entirely for the reasons urged by the Secretary.

Appellant's primary contention is that the court erred in considering the work performed by Kibbey before the administrative agency. That the court did consider this work is obvious, the Secretary contends, both from the size of the award and from the fact that Kibbey's motion referred to this work in attempt-

ing to justify the maximum allowable fee. The Secretary contends that it is well-settled that the court can award a fee only for the services performed before it, and that an attorney must apply to the Secretary for allowance of a fee for work performed before the agency.

Appellee's response is, first, that the Secretary did not present this contention to the District Court and therefore cannot now raise it on appeal, and, second, that the Social Security Act permits a court to award a fee based on all the work performed by an attorney in a case, including work performed before the Secretary.

■ We agree with the Secretary that we should consider this issue. We do so primarily because a determination whether the fee was reasonable necessarily involves an analysis of the factors upon which the court relied in making its discretionary decision. "Where an exercise of discretion properly goes into a trial court determination of whether to grant or deny particular relief, the grounds upon which the order is based are those upon which it must be judged." Oser v. Wilcox, 338 F.2d 886, 893 (9th Cir. 1964). *Cf.* Bentley v. Palmer House Company, 332 F.2d 107, 109 (7th Cir. 1964). Moreover, the question whether the District Court properly considered work performed before the Secretary by the attorney presents "a simple legal issue," Buckeye Cablevision, Inc. v. United States, 438 F.2d 948, 952 (6th Cir. 1971) to be resolved on the basis of admitted facts, and certainly it can be said that this disability case is one of those "exceptional cases" in which the interests of justice require us to decide this legal issue. *See* Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Finally, since we are remanding the case for reconsideration of the fee, we believe it appropriate to make clear what legal services may be considered in fixing reasonable compensation for the attorney.

Before 1965, there was no provision in the Social Security Act authorizing a court to award attorney fees for the prosecution of a successful review of the Secretary's action. Section 206 did, however, authorize the Secretary to regulate attorney fees charged for performing services before him:

> The Secretary may, by rule and regulation, prescribe the maximum fees which may be charged for services performed in connection with any claim before the Secretary under this subchapter, and any agreement in violation of such rules and regulations shall be void.

42 U.S.C. § 406 (1964). Pursuant to this section, the Secretary promulgated regulations establishing a schedule of fees for representation at certain levels of the administrative process, with a provision for higher fees upon approval by the Secretary for good cause shown. *See* Swotes v. Gardner, 392 F.2d 428, 431 (3d Cir. 1968); Chernock v. Gardner, 360 F.2d 257, 258–259 (3d Cir. 1967); Sheppard v. Flemming, 189 F.Supp. 571, 572 (S.D.W.Va.1960). Court decisions unanimously held that this statutory provision did not give the Secretary power to establish attorney fees for representation of a claimant before a court. *See, e. g.,* Gonzalez v. Hobby, 213 F.2d 68, 69 (1st Cir. 1954); Carroll v. Celebrezze, 228 F.Supp. 24 (N.D.Iowa 1964); Sheppard v. Flemming, *supra,* 189 F.Supp. at 572. It was also settled that the Secretary's determination of the size of the fee was not reviewable by the courts, Chernock v. Gardner, *supra;* Sheppard v. Flemming, *supra;* Goodell v. Flemming, 179 F.Supp. 806 (W.D.N.Y.1959), and that the Secretary could not authorize direct payment of the fee awarded from the benefits payable to the claimant. Swotes v. Gardner, 392 F.2d 428 (3d Cir. 1968).

There was a conflict, however, in the decisions concerning the power of a court to award attorney fees for representation beyond proceedings before the Secretary. One view was that courts had no jurisdiction to set a fee for in-court representation and that attorney and client were free to contract as in the case of other litigation. *E. g.,* Carroll v. Celebrezze,

*supra.* This view sanctioned the contingent-fee arrangements that were (and are) the dominant mode of contract between attorneys and Social Security claimants, and that often provided for fees as high as 50% of accumulated benefits. *See, e. g.,* Gardner v. Mitchell, 391 F.2d 582 (5th Cir. 1968); Robinson v. Gardner, 374 F.2d 949 (4th Cir. 1967). Another view was that courts had inherent authority to award attorney fees for work performed before them and that section 205(g) of the Act, 42 U.S.C. § 405(g),[1] permitted the ordering of payment directly to the attorney out of the past-due benefits to which the claimant became entitled by reason of the judicial proceedings. Robinson v. Gardner, *supra;* Celebrezze v. Sparks, 342 F.2d 286 (5th Cir. 1965); Folsom v. McDonald, 237 F.2d 380 (4th Cir. 1956); *see* Blankenship v. Gardner, 256 F.Supp. 405, 407 (W.D.Va.1966). Although it is not entirely clear, it appears that under either view, a contingent-fee arrangement would be honored by the courts, although there is some indication that under the second view courts believed that they could determine the reasonableness of the contingent fee sought and presumably reduce at least the amount of the fee to be certified for payment out of the

benefits awarded. *See* Sheppard v. Flemming, *supra.* *See also* In re Crouse, 273 F.Supp. 642 (S.D.W.Va.1965).

The desire to protect claimants from abuses of the contingent-fee arrangement prompted Congress in 1965 to amend the Social Security Act to regulate explicitly the awarding of attorney fees for in-court representation. Pub.L. No. 89–97, title III, § 332, 79 Stat. 403 (July 30, 1965), renumbered as section 206(a) what was formerly section 206, and added section 206(b), codified in 42 U.S.C. § 406(b).[2] This new section was added to the bill by the Senate Finance Committee, which stated in its report:

(g) Determination of attorney's fees in court proceedings

It has come to the attention of the committee that attorneys have upon occasion charged what appear to be inordinately large fees for representing claimants in Federal district court actions arising under the social security program. Usually, these large fees result from a contingent-fee arrangement under which the attorney is entitled to a percentage (frequently one-third to one-half) of the accrued benefits. Since litigation necessarily involves a considerable lapse of time, in

---

1. 42 U.S.C. § 405(g) provides, in pertinent part:

    (g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow . . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing . . . .

2. 42 U.S.C. § 406(b) provides:

    (b)(1) Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its

judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

    (2) Any attorney who charges, demands, receives, or collects for services rendered in connection with proceedings before a court to which paragraph (1) of this subsection is applicable any amount in excess of that allowed by the court thereunder shall be guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not more than $500, or imprisonment for not more than one year, or both.

many cases large amounts of accrued benefits, and consequently large legal fees, are payable if the claimant wins his case.

The committee bill would provide that whenever a court renders a judgment favorable to a claimant, it would have express authority to allow as part of its judgment a reasonable fee, not in excess of 25 percent of accrued benefits, for services rendered in connection with the claim; no other fee would be payable. Any violation would be made subject to the same penalties as are provided in the law for charging more than the maximum fee prescribed in regulations for services rendered in connection with proceedings before the Secretary—up to $500, or a year's imprisonment, or both. In order to assure the payment of the fee allowed by the court, the Secretary would be permitted to certify the amount of the fee to the attorney out of the amount of the accrued benefits.

Sen.Rep. No. 404, 89th Cong., 1st Sess., in 1965 U.S.Code Cong. & Adm.News, pp. 1943, 2062. Prior to the amendment, an attorney could charge a fee for representation of a claimant before the Secretary and could then charge an additional fee of up to 50% or more of benefits awarded by a court. By enacting the 1965 amendment, Congress obviously intended at least to insure that, regardless what the attorney charged for work before the Secretary, he could recover in addition thereto a contingent fee of no more than 25% of the past-due benefits approved by the court. Although this might enable an attorney to collect more than 25% in a given case, the fees established by the Secretary's schedule were small and it could safely be assumed that the Secretary would not approve a fee in excess of established charges if a court awarded 25%. The 1965 amendment also removed any doubt about the power of a court to determine the reasonableness of a fee.

However, although the salutary purposes of the amendment were clear enough, the language employed by Congress in the new section raised more questions than it answered. Was a judgment on the merits required or merely a decision favorable in some manner to the claimant, such as a remand to the Secretary for the taking of additional evidence? If a remand sufficed, must it be at the claimant's behest? Although the fee was to replace the contingent fee agreed upon for in-court representation, could the court consider services performed before the Secretary in setting the fee? Did the amendment supersede any inherent authority to approve fees for in-court representation, *i. e.,* did anything remain of the holding of cases such as *Sparks, supra*? Courts have not agreed in their answers to these questions.

For example, soon after the effective date of the 1965 amendment, many district courts held that they were authorized to approve and certify fees only when they entered judgments on the merits reversing the Secretary's denial of benefits and directing the award of benefits; a remand to the Secretary upon motion of the claimant (or, *a fortiori*, upon motion of the Secretary) was not considered a "judgment" within the meaning of section 206(b)(1). *See* Elliott v. Gardner, 279 F.Supp. 875 (N.D. Ohio 1967); Haley v. Gardner, 259 F. Supp. 30 (N.D.Okla.1966); Blankenship v. Gardner, 256 F.Supp. 405 (W.D.Va. 1966); *cf.* Duke v. Gardner, 264 F.Supp. 187 (N.D.Ga.1967). The Fourth Circuit, however, in Conner v. Gardner, 381 F.2d 497 (1967), held that the court's authority to award attorney fees existed apart from the 1965 amendment, as shown by the *Sparks* case, *supra*, and thus no "judgment" was necessary, 381 F.2d at 499, citing Robinson v. Gardner, 374 F. 2d 949 (4th Cir. 1967); and that attorneys would not be encouraged to seek remands under the contrary rule. It concluded that Congress intended to encourage attorneys to afford representation to Social Security claimants by assuring the awarding of reasonable attorney fees for in-court representation. 381 F.2d at 500. *See also* Brown v.

Gardner, 387 F.2d 345 (4th Cir. 1967); Ray v. Gardner, 387 F.2d 162 (4th Cir. 1967); Britton v. Gardner, 270 F.Supp. 412, 417 (W.D.Va.1967). The Eighth Circuit has approved this reasoning of the Fourth Circuit, Fenix v. Finch, 436 F.2d 831, 834–835 (1971), and we cited *Robinson* with approval in Philpott v. Gardner, 403 F.2d 774 (6th Cir. 1968). The First Circuit has assumed that a court-ordered remand, even at the behest of the Secretary, constitutes a favorable "judgment" within the meaning of section 206(b)(1). *See* Gardner v. Menendez, 373 F.2d 488 (1st Cir. 1967).

With respect to the question whether a court could include in any fee it awarded services performed by the attorney before the Secretary, most courts have taken the position that, just as the Secretary had no authority to consider services performed before a court, a court was given no power by section 206(b)(1) to do other than to determine and allow a fee compensating an attorney for the work he performed before the court. *See* Gardner v. Menendez, *supra;* Ray v. Gardner, *supra;* Gardner v. Mitchell, 391 F.2d 582 (5th Cir. 1968). These courts for the most part appear to have assumed that the 1965 amendment did nothing more than codify the *Sparks* holding, *see* Gardner v. Menendez, *supra;* Blankenship v. Gardner, supra. However, not all courts have agreed with this view. In Wilson v. Gardner, 282 F.Supp. 287 (S.D.Ohio 1967), the court approved a 25% fee in compensation for the attorney's three-year effort before the Secretary, the district court, and this court, which culminated in a judicial decision reversing the Secretary's denial of benefits. The court emphasized the many administrative appeals that had been taken by the attorney and the extensiveness of the administrative hearing in which the attorney had participated. 282 F.Supp. at 290. *Cf.* Mc-Daniel v. Cohen, 288 F.Supp. 808, 812–813 (W.D.Va.1968).

As the courts were forming these judgments about the scope and meaning of section 206(b)(1), Congress in 1968 amended section 206(a) to add, after the sentence authorizing the Secretary to fix maximum fees for representation before him, the following:

> Whenever the Secretary, in any claim before him for benefits under this subchapter, makes a determination favorable to the claimant, he shall, if the claimant was represented by an attorney in connection with such claim, fix (in accordance with the regulations prescribed pursuant to the preceding sentence) a reasonable fee to compensate such attorney for the services performed by him in connection with such claim. If as a result of such determination, such claimant is entitled to past-due benefits under this subchapter, the Secretary shall, notwithstanding section 405(i) of this title, certify for payment (out of such past-due benefits) to such attorney an amount equal to whichever of the following is the smaller: (A) 25 per centum of the total amount of such past-due benefits, (B) the amount of the attorney's fee so fixed, or (C) the amount agreed upon between the claimant and such attorney as the fee for such attorney's services.

Pub.L.No.90–248, title I, § 173, 81 Stat. 877 (Jan. 2, 1968). The purpose of this provision, according to the House conference report, was "to authorize the Secretary . . . to certify payment of attorneys' fees for services rendered in administrative proceedings from past-due benefits of a successful claimant." House Conf.Rep.No.1030, 90th Cong., 1st Sess., in 1967 U.S.Code Cong. & Adm. News, pp. 3179, 3201. *See also* Swotes v. Gardner, *supra.*

No court appears to have considered whether the 1968 amendment provided a basis for changing the prevailing interpretation of the respective powers of the Secretary and the courts to consider attorney efforts in all forums. At least one court has assumed that it could consider an attorney's work before the Secretary, Hector v. Gardner, 297 F.Supp. 510 (W.D.Mich.1969), but we have, perhaps without the necessity of making

the determination,[3] approved the Fourth Circuit's view that a court can consider only the services performed before it. Whitehead v. Richardson, 446 F.2d 126, 128 (6th Cir. 1971).

From the foregoing, it is clear that we do not write on a clean slate. It is also unfortunate that the precedents written thereon are conflicting to the extent that they defy reconciliation. Accordingly, it appears that we should establish a rule for our circuit that is easy to apply, is economical of court and attorney time, and will carry out congressional intent.

We hold that the tribunal that ultimately upholds the claim for benefits is the only tribunal that can approve and certify payment of an attorney fee, and that the fee cannot exceed 25% of the past-due benefits awarded by that tribunal. The tribunal making this award can consider all services performed by the attorney from the time the claim was filed with the Social Security Administration. We adopt this rule for a number of reasons.

First, the language of section 206 appears on its face to authorize this result and, as we have indicated, the need for simplicity and clarity in application of the Social Security Act militates in favor of this straightforward rule. Under this rule, for example, an attorney will know that he must apply to the Secretary for certification of a fee from past-due benefits if the Secretary makes the decision to award benfits, even if the Secretary's decision follows a remand by a court. The attorney can itemize or otherwise indicate the time and effort he spent on the case, and it can be determined in one proceding how large a fee the attorney should receive. The attorney thus will know to whom to make his single application for a fee. Duplication of effort by the attorney and by the tribunals will be avoided. *Cf.* McKittrick

v. Gardner, 378 F.2d 872, 876 (4th Cir. 1967).

Second, this rule effectuates Congress' obvious intent to limit attorney fees to 25% of benefit awards. It was this intent that prompted Congress to amend section 206 in 1965, and it was this intent that convinced the Fifth Circuit to hold in Dawson v. Finch, 425 F.2d 1192 (5th Cir. 1970), cert. denied, 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970), that section 206 limits the fee that can be received by an attorney for all his work for a claimant, wherever performed, to 25% of the past-due benefits. The rule approved in cases like Gardner v. Menendez, supra, permitting awards up to 25% by both tribunals, could result in the awarding of up to 50% of the past-due benefits in cases in which a judicial remand has been secured. By contrast, the rule which we approve limits the total award to the percentage considered sufficient by Congress, yet protects attorneys by assuring that the single tribunal making the award can consider work done before the other tribunal.

Third, this rule eliminates the redundancy resulting from the Fourth Circuit approach, which limits each tribunal to consideration of the services before it. That approach deprives the first sentence of the 1968 amendment of any meaning since the Secretary exercised the power to set attorney fees prior to the enactment of that amendment pursuant to the sentence which precedes that sentence in the statute as it is now written.

Finally, we believe that the one-tribunal rule which we adopt more nearly fulfills the expectation of the parties to contingent-fee arrangements, which were intended to be regulated by the 1965 and 1968 amendments. These arrangements typically focus on the ultimate result, not on the place where the work was done.

---

3. In *Whitehead,* the case was remanded to the Secretary upon his motion, and thus there was no "judgment" rendered by a court. *But see* Gardner v. Menendez, 373 F.2d 488 (1st Cir. 1967). Accord-

ingly, there was no occasion for the court to discuss the power of a court to consider services performed before the Secretary. *See also* Dawson v. Finch, 425 F.2d 1192 (5th Cir. 1970).

■ Accordingly, since we hold that the tribunal that awards benefits is empowered to approve and certify an attorney fee for all the representation in the case not to exceed 25% of the total benefits awarded, the District Court in this case did not err in considering the services performed by attorney Kibbey before the Secretary.

However, that does not end our inquiry. We must still determine whether the fee was reasonable. We conclude that, in the circumstances of this case, the fee was excessive and must be reconsidered.

Since attorney Kibbey has not itemized his time spent on this case, we have independently examined the administrative and judicial record. The record reveals that in proceedings before the Secretary, Kibbey wrote three letters, including a two-page letter objecting to parts of a medical report; prepared form requests for a hearing and for a review of the decision of the hearing examiner; and represented claimant before the hearing examiner. Subsumed in these efforts, of course, are services such as interviewing the claimant, obtaining and reviewing medical reports, undertaking legal research, etc. Before the court, Kibbey filed a two-page "boilerplate" complaint (which incorrectly referred to claimant as "she" and which incorrectly stated that the Appeals Council had denied review) and a ten-page brief. The legal issue before the court was a routine, substantial-evidence question of ordinary complexity.

Although we doubt whether these services would have justified a fee of 25% of the past-due benefits if the court had reversed the Secretary in the spring of 1967, *compare, e. q.*, Hector v. Gardner, *supra*, Wilson v. Gardner, *supra*, and McDaniel v. Cohen, *supra*, we have no doubt that the court abused its discretion in 1971 by awarding 25% of past-due benefits of which nearly 40% accrued solely by reason of the court's inexcusable delay in rendering judgment. The legislative history of the 1965 amendment to section 206, quoted above,

indicates that Congress was concerned with this problem as it affected the size of contingent fees, and courts interpreting this amendment have expressed a similar concern:

> I may add that it is only with the greatest reluctance that I enforce what I believe to be a very unwise law. It has always been the pride of the bar that its members can have no interests adverse to the interests of their clients. But this new law gives every lawyer who takes a social security case an interest adverse to his client. It is obvious that it will always be to the client's interest to get the case concluded as promptly as possible. But under this new law it will always be of financial benefit to the lawyer to delay the case as much as possible so that the accumulated benefits in which he is to share will be larger.

Blankenship v. Gardner, *supra*, 256 F. Supp. at 410. *See* McKittrick v. Gardner, 378 F.2d 872, 874 (4th Cir. 1967); Redden v. Celebrezze, 370 F.2d 373, 376 (4th Cir. 1966). This case illustrates the validity of the concern expressed by Judge Michie in the *Blankenship* case.

■ Moreover, the accrual of benefits solely by reason of delay is a cumulation that, as the Fourth Circuit has observed about the rate of accrual, bears no "relation to the merits of the claim. . . . The issue in the usual case is entitlement to benefits; their computation is rarely in question. Unlike personal injury actions, therefore, the amount of the recovery bears no relation to the lawyer's skill, effort or effectiveness." McKittrick v. Gardner, *supra*, 378 F.2d at 874. Thus, courts should be especially hesitant to award the statutory maximum in cases in which delays of any consequence have occurred. *See* Redden v. Celebrezze, *supra*, 370 F.2d at 376. *A fortiori*, courts should not award the statutory maximum when final decision has been deferred out of all proportion to delay reasonably incident to the normal course of litigation. Otherwise, as this case illustrates, the intent of Congress to eliminate contingent fees of as high as 50%

would be frustrated because the fee awarded would amount to much more than 25% of the past-due benefits that would have accrued if the claim had been expeditiously upheld.

■ We hold that the court abused its discretion in allowing the statutory maximum attorney fee in this case and we remand for reconsideration. In no event should the fee exceed 25% of the past-due benefits that would have been due if judgment had been rendered within three months of the submission of the Secretary's reply brief in March 1967.[4] In determining a reasonable fee, the District Court should be guided by the principles so well set out in McKittrick v. Gardner, *supra*, and should bear in mind that "[r]outine approval of the statutory maximum allowable fee should be avoided in all cases." Redden v. Celebrezze, *supra*, 370 F.2d at 376.

One other matter requires comment. On April 24, 1967, the District Court ordered this case and approximately 20 other Social Security cases continued pending further order of the court. Identical orders were entered every six months for the next three and one-half years, except for slight revision of the cases listed. This case was decided almost four years after the submission of the final pleading.

■ We are appalled that the District Court could accord such treatment to any class of litigants, and we are outraged that the court did this with Social Security cases. As the Secretary observes in his brief, most claimants are poor and not well educated, and disability claimants have the added handicap of severe physical impairments. The claimant in this case typifies this group, as the Secretary's brief indicates:

He is fifty years old and disabled. He owns a 55 acre farm, but it apparently produces no income. He does not receive workmen's compensation benefits. As of the Administrative hearing in 1965, his only source of income was a monthly $95.20 allotment from a son in the Navy. The claimant's home is heated by a wood stove and does not have running water. He has a fifth grade education, and has never done anything but manual labor, which he is now unable to do.

Brief at 18–19. (Transcript citations omitted.) Although the Secretary stressed these facts to demonstrate the exorbitance of the attorney fee awarded by the District Court, we think them even more pertinent to underscore the injustice wreaked by the four-year continuance ordered by the court. Social Security cases warrant a priority on the calendar of a District Court perhaps second only to criminal cases, and every effort should be made to resolve them expeditiously. The delay that occurred in this case is unconscionable and inexcusable. As we have recently had occasion to comment in disapproving the practice in the Eastern District of Kentucky of referring Social Security cases to Magistrates,

[s]ince the function of the District Court is only to determine whether the decision of the Secretary is supported by substantial evidence, these cases could be briefed, argued and decided long before other civil cases are at issue. . . . Social Security disability cases usually involve poor persons who are receiving public assistance, and there is no good reason why their cases should be shunted in favor of other civil actions.

Ingram v. Richardson, 471 F.2d 1268, at 1271 (6th Cir. 1972).

The court should cease continuing indefinitely *any* class of cases, and should proceed to dispose of any cases remaining from such continuances expeditiously and as the interests of justice require.

---

4. Since 1940, the Judicial Conference of the United States has required district courts to file reports of cases under advisement for more than 60 days, with statements of reasons for the delay. Report of the Proceedings of the Judicial Conference of the United States 5, 6, 142 (Jan. 1940). The period we have stipulated here is 30 days longer than that

We also put the members of the Bar in this Circuit on notice that they are expected to seek the speedy resolution of their clients' claims, that this includes the duty to seek extraordinary writs in this court when necessary, and that we look with disfavor upon the acquiescence in the loss of substantial rights such as occurred in this case. There is nothing in the record to indicate that the attorney made any effort over the three and one-half years of delay to induce the District Judge to decide the case. Although an attorney is understandably careful not to antagonize a judge who has his case under advisement, nevertheless, concern for a disabled client in straitened circumstances should prevail over this caution.

The order of the District Court awarding an attorney fee is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.