Bruce MERLI, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. A. No. 83–189.

United States District Court, D. New Jersey.

June 7, 1984.

Traynor & Hogan by John P. Hogan, Morristown, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty. by Vincent E. Gentile, Asst. U.S. Atty., Newark, N.J., for defendant.

OPINION

SAROKIN, District Judge.

The Department of Health and Human Services has apparently determined to effect economies by systematically denying disability benefits to those persons who are entitled to them. The evidence (of which the court takes judicial notice) in support of this conclusion is so overwhelming that it cannot be refuted.

In the six months ending in December 1983, of the appeals taken to this United States District Court from such denials, 56 percent were reversed or remanded. In a survey of ninety-one districts in the nation the percentage reversed or remanded during this same period was 49 percent.[1] Since the beginning of 1984 the reversal rate in the Third Circuit Court of Appeals of those cases that were affirmed by district courts has been "about fifty percent." *Wier v. Heckler*, 734 F.2d 955 at 957 (3d Cir.1984). Such a rate of reversal throughout the land is staggering and paints an undeniable picture of a heartless and indifferent bureaucratic monster destroying the lives of disabled citizens and creating years of agony and anxiety by ignoring both facts and legal precedent.[2]

The callousness demonstrated is particularly revealing when one recognizes the high threshold which the courts must reach before they are permitted to disturb the administrative conclusion on appeal. The courts do not determine whether the decision is correct or incorrect, but merely whether there is substantial evidence to support it. One can envision even a much greater reversal rate if the courts were permitted to conduct a *de novo* review and decide the matter without reference to the administrative finding.

Furthermore, it should be noted that in addition to adversely affecting the lives of

---

1. The source of these figures is Allyn Z. Lite, Clerk of the United States District Court for the District of New Jersey. The figures were compiled from data obtained from the Statistical Analysis and Report Division of the Administrative Office of the United States Courts.

2. "Depending upon one's perspective, either the judicial system is placing impossible burdens on the administrative apparatus set in place by Congress to initially evaluate benefit claims or the officials in charge of the disability programs are, at least in many instances, ignoring the law." *Wier*, at 956.

the petitioners, the systematic denial of benefits and the appeals which inevitably follow, have brought or will bring the courts to a standstill in respect to other litigation. These appeals now make up a staggering 14.6 percent of all of this district's civil business.[3] If the trend continues, the court will be unable to attend to its other business or to these appeals which merit careful and considered attention.

All of the foregoing is particularly relevant to the application for counsel fees now before the court in this matter. Routinely counsel fees are paid by the petitioner out of the award eventually received. The fee is usually 25 percent of the past-due benefits received and may not exceed that amount by statute.[4] The effect, of course, is obvious. As a result of this insidious policy of denying benefits in many cases in which they should be granted, petitioners receive far less than they should have received, had the benefits not been wrongfully denied in the first instance. Only due to these abuses by the government agency is this multitude of persons compelled to litigate and pay for such litigation.

The court is satisfied that one way to stem this tide and alter what has been described as the government's policy of "informal nonacquiescence," is to require the government and not the claimants to pay counsel fees in these matters. Under the present system the government has nothing to lose by putting these persons through the agony of the appellate process even if it must ultimately pay the benefits

found to be due. Hopefully, by imposing counsel fees on the government, this cruel and inhumane policy and the blatant contempt for judicial decisions will end.

The court also reminds counsel for the government of their obligation under Rule 11, which provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly

---

**3.** This figure represents the percentage of pending civil cases on May 1, 1984 in the District of New Jersey. The Court of Appeals has recently commented upon the number of social security appeals that are currently being filed. "[T]he past three years have seen over a 400 percent increase in the number of filings ..." nationally of suits by individuals denied disability benefits. *Wier v. Heckler*, at 956.

**4.** 42 U.S.C. § 406 provides, in pertinent part: Whenever the Secretary, in any claim before him for benefits under this subchapter, makes a determination favorable to the claimant, he shall, if the claimant was represented by an attorney in connection with such claim, fix (in accordance with the regulations pre-

scribed pursuant to the preceding sentence) a reasonable fee to compensate such attorney for the services performed by him in connection with such claim. If as a result of such determination, such claimant is entitled to past-due benefits under this subchapter, the Secretary shall, notwithstanding section 405(i) of this title, certify for payment (out of such past-due benefits) to such attorney an amount equal to whichever of the following is the smaller: (A) 25 percentum of the total amount of such past-due benefits, (B) the amount of the attorney's fee so fixed, or (C) the amount agreed upon between the claimant and such attorney as the fee for such attorney's services.

after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay. to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

With few exceptions, counsel for the government defend and support the agency's determinations. It is inconceivable to the court that there are not many instances in which government counsel could and should consent to a reversal or remand. The rubber stamp approval does not comport with their obligation to the court as attorneys or their duty as counsel for the United States.

In this case plaintiff Bruce Merli applies for an award of counsel fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Plaintiff brought this civil action to challenge the decision of the Secretary of Health and Human Services (the Secretary) terminating his disability benefits. The court, in an opinion filed on February 23, 1984, granted summary judgment to the plaintiff and against the Secretary. By order of February 23 the matter was remanded to the Secretary for the continuation of disability benefits. This application was timely filed on March 23, 1984.

Plaintiff was awarded disability benefits beginning on June 3, 1968, primarily due to residuals of injuries received as a soldier in Viet Nam. On that date plaintiff was shot in the head. Hospitalizations and surgery followed. He was honorably discharged from the Army in 1968 with a permanent service-connected disability of 100 percent. The wound resulted in significant brain damage manifested by inability to understand and use language, difficulty in reading and writing, muscular weakness affecting the left side of the body, memory impairment and defective vision. The Secretary later reviewed the case and determined that plaintiff's condition had improved sufficiently to allow him to engage in employment. This court reversed, finding no substantial evidence to support that conclusion.

■■■ The EAJA provides, in pertinent part:

> ... a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The party seeking fees is required to submit an application within thirty days of the entry of final judgment

> which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney ... stating the actual time expended and the rate at which fees and other expenses are computed. The party shall also allege that the position of the United States was not substantially justified.

28 U.S.C. § 2412(d)(1)(B). The government has the burden of showing that its position was substantially justified. *Dougherty v. Lehman*, 711 F.2d 555 (3d Cir.1983). The test of whether or not the position of the government was substantially justified is one of reasonableness. Where the government can prove that its position had a reasonable basis both in fact and in law no award should be made. *Id.*

■■■ The government opposes this application and urges that its position in this litigation was substantially justified in law and in fact. The court recognizes that the government's position on the critical question of law was essentially reasonable. In a termination of benefits case, after the claimant presents evidence that the condition remains unchanged, the Secretary

must find that the claimant's condition has improved sufficiently since the initial determination to allow him or her to engage in substantial gainful activity. *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983). The court found that there was no substantial evidence to support this finding, and now finds that the position of the government was not substantially justified in fact. In its brief the government argues at length that the evidence was sufficient for the Secretary to conclude that plaintiff's condition had improved, making reference to specific findings in the medical reports. The court rejects the attempt of the government to reargue its case in spite of the following findings of this court:

There is no evidence of improvement in the weakness of his left side caused by his gunshot wound.

*Merli v. Heckler,* No. 83–189, slip op. at 11–12 (D.N.J. February 23, 1984).

None of the psychological or neurological reports indicate that plaintiff's language and memory difficulties have improved to the extent that he is now able to engage in employment.

*Id.* at 12.

The only credible evidence about the ability of plaintiff to perform the duties of a gas station manager is the evidence presented by plaintiff of his inability to perform the job due to stress and his difficulty with numbers.

*Id.* This was not a case where the legal standards were unclear or in dispute, or a case that was factually a close one. The position of the government in this litigation was not substantially justified.

The government also contends that the application should be denied because of two technical errors in the application. The government asserts that plaintiff has included in the itemization of services time spent in prosecuting this case at the administrative level, while fees are only available for work performed in this court. A review of the affidavit of services reveals that this appears to be a valid objection. The government also notes that plaintiff

has not set forth the rate at which the fees are to be computed in his application. The government contends that these errors are a sufficient ground upon which to deny the application.

■ The court recognizes that the EAJA is a waiver of sovereign immunity, and as such, it must be strictly construed in favor of the sovereign. *Ruckelshaus v. Sierra Club,* 462 U.S. 680, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). The government relies upon several cases in which fee applications were denied because of this principle. *Ruckelshaus,* 103 S.Ct. at 3274 (holding that a party may not recover attorney's fees under the Clean Air Act absent some degree of success on the merits); *Monark Boat Co. v. N.L.R.B.,* 708 F.2d 1322 (8th Cir.1983) (it was not error to deny application for fees under the EAJA when application was submitted one day after the time limit contained in the Act); *Commissioners of Highways v. United States,* 684 F.2d 443 (7th Cir.1982) (holding that the EAJA was not applicable when the only matter pending on its effective date was a denial of the motion for fees. As an alternative ground, the court found that the Commissioners were not a "party" within the meaning of the Act.)

■ The defects in the application before this court are not significant enough to warrant denial of the application, and the government has not been harmed by them. Plaintiff's application clearly states that compensation is sought only for services performed before this court and not for work performed in the agency proceedings. It seems that some noncompensable hours were inadvertently included in the affidavit of services. The government knew, on the date it received the application, the maximum number of hours that could be the basis of an award of fees; this allowed the government to estimate its maximum liability for fees, utilizing the usual statutory maximum rate of $75.00 per hour. 28 U.S.C. § 2412(d)(2)(A). Similarly, the government has not been harmed by the failure of the plaintiff to specify the rate at which fees should be computed. As noted

above, the statute contains a maximum rate of $75.00 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* Nothing in the application indicates that an increased rate will be sought. Thus, the government was able to estimate its maximum liability upon receipt of the application.

Because the court concludes that the deficiencies in the application are minor, and the government has not been harmed thereby, the court will grant the application for fees, but reserve the determination of the amount. Plaintiff is directed to file, within ten days, an affidavit setting forth the hourly rate of compensation and the number of hours spent in preparation of the case before this court. The government shall thereafter have ten days to respond. *See Constantino v. United States*, 536 F.Supp. 60 (E.D.Pa.1981) (because the court had insufficient facts from which to set a fee under the EAJA the motion was denied without prejudice and plaintiff was directed to amend the application to include an itemization of the hours expended on the case.) When these submissions are received the court will determine the amount of the award.

CONCLUSION

Although the court's introductory remarks are predicated upon statistics, it is important to recognize the lack of humanity that the system now engenders in individual cases. The denial of disability benefits in a case in which they are warranted has a devastating effect upon the individual and his or her family. The process which follows is long, humiliating and expensive. If denial and degradation have become official government policy, then we have forgotten the purpose for which these broad social programs were enacted. If economies are to be effected, let the government do it forthrightly and openly through legislation and not through this insidious process which demeans the individual and denies him or her the benefits Congress intended and to which he or she has contributed.

The present policy of the Department of Health and Human Services has demonstrated contempt for the rulings of the federal courts and for the rights and needs of the people affected by its arrogance. Congress makes the law. The judiciary interprets it. The executive administers it. In this instance, the Department of Health and Human Services apparently has arrogated all three functions unto itself.

The federal agency should be reminded that the Social Security laws were enacted to relieve human suffering, not to cause it. It is hoped that by shifting the cost of this litigation from the innocent petitioner to the government, in instances where the law permits, that even the Department of Health and Human Services will correct its ways, if not in the interests of the claimants, at least in the interests of the taxpayers whom it supposedly serves.