**Edward TAYLOR, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 83–80.

United States District Court,
D. New Jersey.

May 16, 1985.

Freeman & Bass by Constance J. Kosuda, Newark, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty. by Judy Sello and Paul J. Dillon, Newark, N.J., for defendant.

## OPINION

SAROKIN, District Judge.

This court has previously suggested that the Equal Access to Justice Act be utilized as a means of deterring the indifference displayed by the Department of Health and Human Services to court precedent as well as to the suffering and humiliation of those to whom benefits have been wrongfully denied. *Merli v. Heckler*, 600 F.Supp. 249 (D.N.J.1984). If this avenue of recovery is available to counsel, it is incumbent upon counsel to pursue it or justify the failure to do so. Otherwise, the net award to claimants may be needlessly reduced. Applications for counsel fees are subject to analysis based upon the quality of the services performed and the result achieved. Failure to seek fees from the government, rather than the client, clearly affects both the quality of counsel's performance and the result achieved, particularly if there is a substantial likelihood that the govern-

ment could be held responsible for the payment of those fees.

Accordingly, in every such application counsel should be required: 1) to advise the client of his or her right to contest the amount of the fee, and 2) to explain that in counsel's opinion no other means for recovery of said fee is available, and the grounds for such opinion.

By imposing these requirements upon counsel, the court will be assured that successful claimants will be advised of the claim for fees from them and their right to contest such fees. Further, the court and the client will be assured that other avenues to collect such fees have been exhausted or cannot be for certain valid and stated reasons.

Because of the importance of not eroding the recovery by Social Security claimants in these matters, counsel fees should not be permitted to reduce the amount actually received except as a last resort. It is unfortunate enough that the multitude of these claims are wrongfully denied, causing untold anguish and deprivation in the interim, but to unnecessarily reduce the award further where counsel fees could be obtained elsewhere would serve only to compound the wrongs suffered in these matters.

This matter is before the court on the application of plaintiff's counsel for an award of attorney's fees equal to twenty-five per cent of the back benefits paid to plaintiff pursuant to the Opinion and Order of the court dated July 23, 1984. The fee requested amounts to $8,214.50. Counsel documents seventy (70) hours of work on this case, thus requesting a fee of $117.00 per hour. The government has objected to this fee, arguing that only those hours representing work performed before the court are properly encompassed by this application. It recommends authorization of a $4,000.00 fee for such services, and the filing of a separate application for the remainder before the Social Security Administration.

Counsel served his notice of motion for fees upon plaintiff by certified mail, return receipt requested, on January 4, 1985. *See* Aff. of Paulette L. Jones (1/4/85) ¶¶ 1–2. The court has received no opposition to counsel's request from plaintiff.

Title 42 U.S.C. § 406(b)(1) states, in pertinent part:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 per cent of the total of past-due benefits to which the claimant is entitled by reason of such judgment ...

This section embodies "the sound policy of providing claimants with adequate representation ...," *Reid v. Heckler*, 735 F.2d 757, 760 (3d Cir.1984), and thus enhances the substantive rights of Social Security claimants. This does not, however, mean that attorneys' requests for fees should be rubber-stamped. Indeed, the district court has an affirmative obligation to determine the reasonableness of the fee requested by an attorney.

> While the lawyer is entitled to a reasonable compensation for the services rendered to him in the judicial proceeding, these benefits are provided for the support and maintenance of the claimant and his dependents and not for the enrichment of members of the bar. Routine approval of the statutory maximum should be avoided in all cases. *In a great majority of cases, perhaps, a reasonable fee will be much less than the statutory maximum.*

*Lewis v. Secretary of Health and Human Services*, 707 F.2d 246, 248 (6th Cir.1983) (emphasis in original), quoting *Redden v. Celebrezze*, 370 F.2d 373, 376 (4th Cir. 1966). *See also MacDonald v. Weinberger*, 512 F.2d 144, 146–47 (9th Cir.1975); *Fenix v. Finch*, 436 F.2d 831, 836 (8th Cir.1971); *McKittrick v. Gardner*, 378 F.2d 872 (4th Cir.1967); *Eustache v. Secretary*

*of the Department of Health and Human Services,* 601 F.Supp. 176, 178 (E.D.N.Y. 1985); *Burris v. Heckler,* 598 F.Supp. 573, 574–75 (N.D.Texas 1984); *Stiltner v. Califano,* 470 F.Supp. 261, 262 (E.D.Tenn.1977). Thus, the court is to consider, for example, the time and labor required; the novelty and difficulty of the questions posed; the skill required; the customary fee charged; whether the fee is contingent or fixed; the time limitations imposed upon the attorney; the amount involved and result attained; the experience, reputation and ability of the attorney; the nature and length of the professional relationship with the client; and awards in similar cases. *Blankenship v. Schweiker,* 676 F.2d 116, 117–18 (4th Cir.1982), citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974); *McKittrick v. Gardner, supra. See also Burris v. Heckler, supra,* 598 F.Supp. at 574–75. *See generally* 20 C.F.R. § 404.-1725(b) (listing factors considered by the Secretary in reaching a determination as to fee).

The court scrutinizes applications such as these with particular care because the interests of the attorney and his or her client "are inherently in conflict" in Social Security cases. *Lewis, supra,* 707 F.2d at 251, quoting *Moore v. Califano,* 471 F.Supp. 146 (S.D.W.Va.1979). Of course, such conflict peaks at the point at which the attorney requests a fee to be deducted, dollar-for-dollar, from the award of back benefits to which the claimant is entitled. Moreover, having entered into a contingent fee arrangement for services culminating in a result in his or her favor, a claimant is unlikely to challenge the attorney's fee requested, as long as it is in accord with such agreement. As stated by one court,

> ... in most Social Security cases ... entitlement to benefits constitute[s] the sole issue in the case; the proper method of computation of benefits [is usually] not disputed. In such cases there is generally a much less direct correlation between the size of the claimant's recovery and the lawyer's skill, effort or effectiveness than there is in, say, most personal injury cases. *See McKittrick v. Gard-*

*ner, supra,* [378 F.2d] at 874. Moreover, we are not overly impressed by [counsel's] observation that [plaintiff] has not objected to the size of the award. As the court noted in *McKittrick, supra,* at 874, the least competent and diligent attorney "may be the quickest to declare to the client, 'I won your case.' Such a claimant is unlikely to object to an allowance of a fee in accordance with his contingent fee arrangement, for, rightly or wrongly, he will usually give the lawyer all of the credit for the success in winning an award of benefits for him."

*Lewis, supra,* 707 F.2d at 248. *See also Eustache, supra,* 601 F.Supp. at 178, citing *Modica v. Secretary of Health and Human Services,* 581 F.Supp. 39 (E.D.N.Y. 1984) (court would not treat the contingency agreement as a factor in setting fees under section 406(b)(1) ). However, the conflict between attorney and client in Social Security cases exists well before the point at which the attorney's fee is set. Because such fee is based upon a percentage of the back benefits received,

> ... the dilatory lawyer is given a premium; the prompt, effective lawyer who moves expeditiously is penalized. The regrettable delays in the final adjudication of these claims, in large measure, may be unavoidable, but they should not be compounded by incentives for procrastination and delaying tactics on the part of a claimant's attorney.... while most lawyers are conscientious, statutes need not encourage those who are not completely so to be less conscientious in the expeditious prosecution of the claims of their clients.

*McKittrick, supra,* 378 F.2d at 874. *See also Redden, supra,* 370 F.2d at 376. Hence, even during the course of litigation, the interests of counsel and client diverge: while the latter understandably desires the quickest possible resolution of the matter in his or her favor, section 406(b) may encourage some counsel to prolong the matter in order to increase the size of the award from which the fee is drawn.

There are two solutions to this conundrum. The first and most obvious is embodied in the Equal Access to Justice Act,

28 U.S.C. § 2412 ("EAJA"), which provides for attorney's fees to be paid not out of the pocket of the claimant, but by the government, in cases in which its position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). "It is settled law in [the Third] Circuit that the Equal Access to Justice Act applies to judicial review actions brought pursuant to the Social Security Act, 42 U.S.C. § 405(g)(1982)." *Tressler v. Heckler,* 748 F.2d 146, 148 (3d Cir.1984) (citing authorities). *See also Wolverton v. Heckler,* 726 F.2d 580, 582 (9th Cir.1984) (the existence of section 406(b) does not preclude an award of fees under the EAJA). Indeed, the purpose of the EAJA was "to remove the financial barrier faced by individuals litigating valid claims against the government," thus encouraging individuals to contest injustices, in furtherance of the public interest, rather than endure them. *Brown v. Secretary of Health and Human Services,* 747 F.2d 878, 880 (3d Cir.1984) (citing legislative history). As such, the law in this circuit favors Social Security claimants in cases such as these: the government bears the heavy burden of making "a 'strong showing' that its position was substantially justified," *Tressler, supra,* 748 F.2d at 150, quoting *Natural Resources Defense Council v. United States Environmental Protection Agency,* 703 F.2d 700, 712 (3d Cir.1983). *See generally Washington v. Heckler,* 756 F.2d 959, 961 (3d Cir.1985). Such showing cannot be based upon "some evidence," *Tressler, supra,* 748 F.2d at 150, and can never be made where "the government's legal position clearly offends established precedent," *Washington, supra,* 756 F.2d at 962, or where there was "no reasonable basis in fact" for the Secretary's denial of plaintiff's claim for benefits. *Dennis v. Heckler,* 756 F.2d 971, 976 (3d Cir.1985). Thus, although the EAJA purports to be "a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous," *Washington, supra,* 756 F.2d at 961, quoting *Dougherty v. Lehman,* 711 F.2d 555, 563 (3d Cir.1983), "the bottom line seems to be that [the Court of Appeals] always reverse[s] denials

of attorney's fees." *Washington, supra,* 756 F.2d at 968 (Aldisert, C.J., concurring). The reason, of course, is that the decisions of the Secretary of Health and Human Services are so often lacking in substantial justification, either in fact or for failure to follow well-settled legal precedent. *See generally Wier v. Heckler,* 734 F.2d 955, 956–57 (3d Cir.1984). Indeed, this court has suggested that

> ... one way to stem this tide and alter what has been described as the government's policy of "informal non-acquiescence," is to require the government and not the claimants to pay counsel fees in these matters. Under the present system the government has nothing to lose by putting these persons through the agony of the appellate process even if it must ultimately pay the benefits found to be due. Hopefully, by imposing counsel fees on the government, this cruel and inhuman policy and the blatant contempt for judicial decisions will end.

*Merli v. Heckler, supra,* 600 F.Supp. at 251.

The court believes that more frequent invocation of the EAJA will have an additional salutary effect: it will ameliorate the conflict of interest between attorney and client. If fees come from the government and are based upon the number of hours actually worked rather than upon some statutorily-mandated-contingency percentage, counsel will be much more likely to seek the expeditious processing of their clients' claims, rather than to be tempted to allow the amount upon which their fee is based to multiply merely by the passage of time. Moreover, they will avoid even confronting their client in the adversary situation created by section 406(b), for the interests of attorney and client will always overlap. Hence, the EAJA creates all the right incentives, and avoids the problems which the court here faces. Indeed, the court believes that, in cases in which the EAJA applies, because the government's position was not substantially justified, attorneys *must* make applications under the Act. If they do not, as here, it is highly appropriate to reduce the fee award ultimately entered, and in this

case and all future cases, the court will so reduce such awards, by an amount to be determined.[1] The rationale for this holding is clear under the caselaw discussed earlier. *See supra* at 1257–1258. First, to diminish a claimant's past-due benefits by up to twenty-five per cent where the amount so lost could or should have been paid by the government directly affects the "result attained." Second, the failure to make an EAJA application where one was appropriate directly calls into question the "ability of the attorney." And third, the attorney's willingness to create a situation of conflict with his or her client sheds light on "the nature ... of the professional relationship with the client," revealing such nature to be less than it ought to be.

Hence, attorneys should be on notice that from this point forward, they act at their peril, rather than at the peril of their clients, when they move for fees pursuant to section 406(b).[2] In so holding, the court seeks to diminish the frequency with which the situation it here faces now recurs, and to vindicate the purposes of the EAJA in so doing. It does not, in any way, mean to chill the enthusiasm or decrease the frequency with which attorneys choose to represent Social Security claimants, and it does not believe its ruling will have such result. Indeed, it will not, so long as attorneys first utilize the EAJA where it is appropriate and then section 406(b) where it is not. And, of course, the filing of an EAJA application does not preclude a subsequent filing under section 406(b).[3]

■ The second solution to the conundrum here presented is far simpler, but equally as important. There is no question but that, when making section 406(b) applications, attorneys are required to give notice to their clients as to the existence of such application. *See* 20 C.F.R. § 404.-

---

**1.** The court does not here express a final opinion as to the appropriate amount of fees in this case. It does, however, note that the $117.00/hour fee requested by counsel is the highest fee it has yet been asked to approve in a Social Security case. The court also notes that the brief filed by counsel in this matter failed to argue several legal and many factual matters which ultimately became the basis for the court's July 24, 1984 Opinion and Order granting benefits to plaintiff. Nor did counsel cite to the court the leading authorities in the Third Circuit by which this court is bound. Nor, after the court described the government's actions in this matter as "unlawful and callous behavior" and "an affront to the statute, to the notion of separation of powers, and to the principles of humanity that ought to guide all governmental decision making," does counsel, apparently, find this an appropriate case in which to apply for EAJA fees from the government. In setting the fee ultimately awarded, this is a factor which the court cannot help but take into account. On the other hand, however, the court also disagrees with the government's position, insofar as it argues that counsel cannot here make application under section 406(b) for fees earned in administrative hearings before the Secretary. The Court of Appeals for the Third Circuit has expressly left the issue of whether it is proper to do so open. *Reid v. Heckler, supra,* 735 F.2d at 761 n. 3. However, the court believes that the weight of authority allows counsel for a claimant who has obtained a judgment from the district court ordering the Secretary to grant benefits, to request fees for both the services rendered before the Secretary and those rendered before the court. *See, e.g., Webb v. Rich-*

*ardson,* 472 F.2d 529, 535, 36 (6th Cir.1972); *Kemp v. Schweiker,* 587 F.Supp. 778 (W.D.Pa. 1984) *Courter v. Heckler,* 577 F.Supp. 892 (S.D. Ohio 1984); *Ruzicka v. Heckler,* 562 F.Supp. 499 (N.D.Ill.1983). *See also Dawson v. Finch,* 425 F.2d 1192, 1194 (5th Cir.), *cert. denied,* 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970), citing Hearings on H.R. 6675 Before the Senate Committee on Finance, 89th Cong., 1st Sess. at 512–13. Those precedents to the contrary are based upon cases in which the district court remanded the matter to the Secretary. In such a situation, the claimant has prevailed before two different tribunals and it is accordingly a reasonable reading of § 406(b) to require the fees arising from the administrative proceeding to be determined by the Secretary and those from the district court proceeding by the court. *See, e.g., Morris v. Social Security Administration,* 689 F.2d 495 (4th Cir.1982); *MacDonald v. Weinberger, supra; Whitehead v. Richardson,* 446 F.2d 126 (6th Cir.1971); *Fenix v. Finch, supra,* 436 F.2d at 838; *Gardner v. Menendez,* 373 F.2d 488 (1st Cir.1967). Here, the court ordered that benefits be granted. It thus has jurisdiction to award attorney's fees for the entirety of the prosecution of plaintiff's disability claim. Indeed, to do otherwise would be inefficient and engender unnecessary litigation.

**2.** Indeed, the court will recommend the adoption of a formal rule to this effect.

**3.** EAJA petitions may be filed up until thirty days after the government's right to appeal has lapsed. *Taylor v. United States,* 749 F.2d 171 (3d Cir.1984). Section 406(b) applications are

1725(a)(7); *Robinson v. Secretary of Health, Education and Welfare*, 456 F.Supp. 876, 878 (E.D.Mich.1978) ("Basic fairness requires that when an attorney claims to be entitled to money that would otherwise go to that attorney's client, the attorney should be required to notify the client of his claim."); *Moore v. Califano*, 471 F.Supp. 146, 148–49 (S.D.W.Va.1979). *See also Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981) (Secretary must inform claimant of statutory right to counsel, paid for by fee in conformity with § 406(b)(1)). Generally, section 406(b) applications are therefore served upon a claimant. However, the court believes that such applications do not adequately inform claimants of their rights. The court has been in the practice of writing letters to claimants, informing them of their right to oppose such fee requests. Henceforth, however, the court will require that enhanced notice be given as part of counsel's fee application to the client informing:

(1) that the client may object to the fee imposed either in person or by letter; and

(2) that counsel has chosen to make application under section 406(b) rather than under the EAJA and why (or that application under EAJA has been made and denied).

Such notice is to be filed with the court.

Future fee applications under section 406(b) are to be governed by these notice requirements, which requirements are made necessary by the adversary nature of the respective positions of counsel and client, as well as by the confusion which most Social Security claimants must feel when confronted by a fee application such as the one here at issue, and indeed, by the entire disability determination process. The due process clause requires no less. *See generally Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 313–20, 70 S.Ct. 652, 656–60, 94 L.Ed. 865 (1950).

This court has occasion, time after time, to reverse determinations of the Secretary of Health and Human Services, and to require the payment of disability benefits to claimants. The Equal Access to Justice Act allows counsel to be paid, without depriving claimants of monies owing them. The court believes that it ought, therefore, be used more frequently and whenever the circumstances warrant. If counsel choose to seek payment out of funds otherwise intended for the benefit of the client, they should be required to notify the client and justify the failure to maximize the award to the client rather than deplete it. If they cannot justify it, the fee accordingly awarded should reflect their less than completely successful efforts on behalf of their clients. After compliance with the foregoing, the court will consider the merits of counsel's application consistent with this Opinion.

not time-limited. Moreover, it should be noted that the time spent on even erroneous EAJA applications ought to be reflected in a section 406(b) award, since such application will reflect positively on counsel's desire to achieve the best possible result for his or her client.