James MEYERS, SSN:
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, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant.

No. C-1-84-539.

United States District Court,
S.D. Ohio, W.D.

Nov. 12, 1985.

Michael J. Mooney, Cincinnati, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, and Pat Hanley, Asst. U.S. Atty., Cincinnati, Ohio, for defendant.

## ORDER GRANTING ATTORNEY'S FEES

SPIEGEL, District Judge.

### I. INTRODUCTION

This matter is before the Court on plaintiff's motion for an award of costs and attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (docs. 13, 16), in his successful appeal from the Secretary's denial of disability insurance and Supplemental Security Income (SSI) benefits. Alternatively counsel for plaintiff seeks an award under the Social Security Act (Act), 42 U.S.C. § 406(b)(1) (doc. 18), which permits award of an attorney's fee of up to twenty-five percent of plaintiff's past-due benefits. The Secretary opposes an award of attorney's fees pursuant to the EAJA on the grounds that her position was "substantially justified" (doc. 17), but does not oppose approval of a reasonable fee pursuant to 42 U.S.C. § 406(b)(1) (doc. 19).[1]

In this Social Security case, plaintiff's counsel seeks fees pursuant both to

---

1. According to Local Rules, the Secretary's memorandum contra to plaintiff's application for attorney's fees under the EAJA was not filed timely. However, out of an abundance of caution, we considered it before rendering the decision herein.

The Secretary opens said memorandum contra with this statement:

> The Court is therefore in a position, under 42 U.S.C. § 406(b)(1), to award attorney fees up to 25% of past-due benefits payable as the result of its favorable ruling. That section also specifically provides that "no other fee may be payable or certified for payment for such representation except as provided in this paragraph."

(Doc. 17, p. 1.) To the extent that the Secretary implies that fees should be sought only pursuant to section 406(b)(1), we reject her position outright, as the upcoming text indicates.

EAJA, 28 U.S.C. § 2412(d)(1)(A),[2] and the Act, 42 U.S.C. § 406. Although both statutes exists for the purpose of awarding attorney's fees and costs, they differ substantially in several respects. Briefly, the EAJA provides that the attorney representing a prevailing claimant may recover, on his or her client's behalf, attorney's fees and costs in a civil action against the United States unless the position of the United States was "substantially justified" or special circumstances make an award unjust.[3] Fees under the EAJA can only be awarded for services performed before a court, and not for services performed at the administrative level. *Miller v. United States,* 753 F.2d 270, 275 n. 3 (3d Cir.1985); *Guthrie v. Schweiker,* 718 F.2d 104, 108 (4th Cir.1983); *Berman v. Schweiker,* 713 F.2d 1290, 1296 (7th Cir.1983). In contrast, to merit an award of fees under the Act, an attorney need only have represented plaintiff successfully before the district court. Further, the Act, unlike the EAJA, permits an award of fees for work done both at the trial and administrative levels. 42 U.S.C. § 406(a), (b).

■ The question we must decide initially is whether attorney's fees may be awarded under both the EAJA and section 406 of the Act. At first blush, an affirmative answer would seem to effect double recovery. Recently, however, Judge Nickerson ruled otherwise in *Eustache v. Secretary of Department of Health and Human Services,* 601 F.Supp. 176, 178 (E.D.N.Y.1985). He observed a fundamental difference between the awards. Under section 406, the award comes out of the claimant's disability monies. But in the case of the EAJA, the award is authorized against the public fisc. *Id.* An application under the EAJA is deemed to be made on behalf of the claimant by counsel, rather than, as with section 406, by counsel "against" his or her client and on his or her own behalf. *Id.* Accordingly, any funds awarded pursuant to the EAJA serve as a reimbursement to the claimant for fees paid out of his or her disability award to his or her counsel.

■ Given the purposes of both statutes, we agree with Judge Nickerson's method of handling concurrent and/or consecutive fee petitions under the EAJA and section 406. To permit a fee award under the EAJA, assuming, of course, that the necessary standard is met, in addition to that allowed by the district court out of a claimant's past-due benefits, does no more than reimburse the claimant for his or her expenses and results in no windfall to the attorney. Such a scheme facilitates the purposes of the EAJA—that is, shifting a prevailing party's litigation expenses to the United States that that party has incurred while contesting unreasonable government action. *See, e.g., Kerr v. Heckler,* 575 F.Supp. 455, 456 (S.D.Ohio 1983).[4]

---

**2.** Although subsection (d) of the EAJA expired on October 1, 1984, plaintiff's motion is properly filed because that subsection "continue[s] to apply through disposition of any action commenced before the date of repeal." Pub.L. No. 96–481, § 204(c), 94 Stat. 2325, 2327.

Effective August 5, 1985, the Court observes that the EAJA was reactivated, but with certain amendments. Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, 99 Stat. 183 (1985).

**3.** This Court has previously held that section 2412(d)(1)(A) is applicable to Social Security cases. *Kerr v. Heckler,* 575 F.Supp. 455 (S.D. Ohio 1983).

**4.** The Act, through section 406, places a ceiling on the fee that may be awarded as a consequence of successful representation of a claimant at the district court level. The statute provides explicitly that an attorney may be awarded no more than twenty-five percent of the past-due benefits by the court. 42 U.S.C. § 406(b)(1); *see also Webb v. Richardson,* 472 F.2d 529 (6th Cir.1972). In fact, an attorney who "charges, demands, receives, or collects ... any amount in excess of that allowed by the court shall be guilty of a misdemeanor." 42 U.S.C. § 406(b)(2). To a lesser extent, the EAJA also limits a fee award by virtue of a maximum hourly rate recoverable and a proscription against an award for hours spent at the administrative level.

This Court's experience with both section 406 and EAJA petitions leads us to conclude that, in most cases, the maximum amount awardable under section 406 will far exceed the maximum amount awardable under the EAJA. In fact, such was the result in *Eustache,* wherein $2,850 was awarded under section 406 and $2,137.50

Our conclusion is fortified by the language inserted by Congress in the newly revised EAJA. *See* Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, 99 Stat. 183 (1985). Section 3 of the Act specifically allows for an award of attorney's fees under both the EAJA and section 406. While that provision temporally is not applicable to the instant case,[5] we nonetheless acknowledge it for purposes of Congressional intent on this question of law.

■ The obvious financial advantage to the claimant of an award under the EAJA has prompted one court to hold that attorneys must first proceed under the EAJA when appropriate. If the attorneys fail to do so, a reduction in the fee ultimately awarded under the Act is "highly appropriate." *Taylor v. Heckler*, 608 F.Supp. 1255, 1259 (D.N.J.1985). As of this writing, and until the Sixth Circuit directs otherwise, this Court will not consider it remiss to proceed under section 406 alone when petitioning for attorney's fees. We recognized in *Kerr* that very few cases arise in which the Secretary's position is not substantially justified. 575 F.Supp. at 458. Therefore, we feel that it is inappropriate at this time to mandate routine applications for fees under the EAJA.

■ We now proceed to determine whether the EAJA permits recovery of attorney's fees on these facts. The Court must examine whether the Secretary's position in the underlying litigation was "substantially justified" within the meaning of 28 U.S.C. § 2412(d)(1)(A). As we indicated in *Kerr*, the operational standard under the

EAJA "is essentially one of reasonableness," and the pertinent inquiry is whether the position maintained by the Secretary had a reasonable basis in law and fact. 575 F.Supp. at 457. Our finding that the decision of the Administrative Law Judge (ALJ) was not supported by "substantial evidence" does not require automatically that we now find the Secretary's position not "substantially justified." *Id.* at 458. Although both tests are couched in terms of "reasonableness," an inquiry into "substantial evidence" and "substantial justification" are, without a doubt, distinct. *Id.*

For an insured claimant to be considered "disabled" within the meaning of the Act, he must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A person is unable to engage in any substantial gainful activity only if the impairment(s) is (are) so severe that he is unable to perform his previous work *and*, considering his age, education, and work experience, also unable to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A)

---

was awarded under the EAJA. When the opposite is true, however, a problem arises. Under section 406(b)(2), an attorney could be deemed guilty of a misdemeanor if the award under the EAJA exceeds that allowed under section 406(b)(1). The new amendments to the EAJA directly address this situation, indicating that the ramifications of section 406(b)(2) are avoided if "the claimant's attorney refunds to the claimant that amount of the smaller fee." Pub.L. No. 99–80, § 7(b), 99 Stat. at 186. *See also* H.Rep. No. 120, 99th Cong., 1st Sess. 19–20, *reprinted in* No. 6 August 1985 U.S.Code Cong. & Ad.News 132 at 148–49. We need not make a ruling on this issue as it applies not to the

instant case; query, however, whether an attorney would be in jeopardy if he or she accepted an EAJA fee award higher than that authorized pursuant to section 406(b)(1) without protection of the recently enacted EAJA amendments.

**5.** As to certain prior cases, the amendments apply to causes commenced "on or after October 1, 1984, and finally disposed of before the date of the enactment of this Act." In general, the amendments apply to causes "pending on or commenced on or after" the date of enactment. Pub.L. No. 99–80, § 7(b), 99 Stat. at 186.

(disability insurance), 42 U.S.C. § 1382c(a)(3)(B) (SSI).

The Sixth Circuit has held that a determination of disability, as defined above, is to be considered pursuant to the following seven-step analysis:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. *See* 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. *See* 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.

3.  Does the claimant have severe impairment(s)—i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 404.1521; 20 C.F.R. §§ 416.920(c), 416.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. *See* 20 C.F.R. § 404.1509; 20 C.F.R. § 416.909.

5.  Does the claimant have any impairment or combination of impairments meeting or equalling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. *See* 20 C.F.R. §§ 404.1520(d), 404.1526(a); 20 C.F.R. §§ 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental·demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to Step 7. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work—i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. If no, the claimant is disabled. *See* 20 C.F.R. §§ 404.1505(a), 404.1520(f)(1); 20 C.F.R. §§ 416.905(a), 416.920(f)(1).

*Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

## II. FACTUAL AND PROCEDURAL BACKGROUND

At the time of filing his application for disability and SSI benefits on March 21, 1983, plaintiff was fifty-eight years·of age. He completed his education through the ninth grade. His past relevant work experience had been as a welding gun repairman at General Motors for twenty years, involving constant walking, standing, bending, reaching, and climbing of ladders. He frequently was required to lift spools of wire weighing between eighty and one hundred pounds (tr. 80–81).

Plaintiff alleged that he had been disabled and unable to work since he quit his job at General Motors on September 18, 1982 because of pain in his back, hip, and leg, and weakness in his right knee occasioned by degenerative joint disease and nerve root disease. The day after plaintiff left his job, extreme pain in his back and leg caused him to be hospitalized for eleven days. Plaintiff's activities after he left his job were limited to light chores around the house. His testimony before the ALJ revealed that he needed assistance putting on his socks because he could not bend sufficiently. He was capable at bathing himself, but was required to sit on a bench in the tub, as he was unable to sit all the way down. His sleep often was interrupted by pain, for which he took Tylenol With Codeine. Plaintiff additionally took valium for his nerves, and walked with a cane to take pressure off of his leg (tr. 42–48).

The ALJ found plaintiff not disabled essentially for these reasons: one, that plaintiff could do work categorized as "medium" (tr. 19) and, two, that plaintiff had the Residual Functional Capacity (RFC) to per-

form his past relevant work as a welding gun repairman (tr. 20). The ALJ reached his conclusions despite the assessments of Dr. Barry A. Rubin, plaintiff's treating physician for nine years, who opined that plaintiff's condition precluded even sedentary work. The ALJ justified his denial of plaintiff's benefits as follows:

> The objective medical findings in this case confirm that Mr. Meyers is impaired due to arthritis or degenerative joint disease. However, they do not support the extreme limitations imposed on his tolerance for standing and walking mentioned by Dr. Rubin nor do they support any limitations on his ability sit.... His functional capacity appears more consistent with the impression expressed by Gerald W. Klyop, MD, and Katherine Maurath, MD, who examined the medical record for the Ohio Bureau of Disability Determination and who both concluded he remained capable of up to medium work activity, than with the assessment of Dr. Rubin which would have precluded even sedentary work (tr. 17–18).

Before the ALJ was a report, prepared by Dr. Rubin, that was an update of plaintiff's condition as of October 25, 1983. Dr. Rubin's report disclosed that plaintiff suffered from, among other things, degenerative joint disease of the lumbar and dorsal spines, chronic lumbosacral and lumbodorsal musculoligamentus strain, lumbar nerve root irritation, and short left leg (tr. 153). In describing the functions that plaintiff could perform in an eight hour day, Dr. Rubin stated that plaintiff could: stand, walk, or sit for one-to-two hours; lift 20–25 pounds on an infrequent basis; lift 5–10 pounds on an occasional, but not frequent, basis; perform repetitive foot movements not greater than one-to-two hours a day; and described his ability to squat, crawl, bend, or climb as "severe[ly] restrict[ed]" (tr. 153). Dr. Rubin concluded that because of the "chronic nature" of plaintiff's degenerative joint disease and osteoarthritis, which was "progressively worsening," plaintiff was "effectively disabled" (tr. 151).

■ The Sixth Circuit repeatedly has endorsed the following four legal propositions in addressing the issue of burden of proof in Social Security cases:

1. The burden of proof in a claim for Social Security benefits is upon the claimant to show disability which prevents her from performing any substantial gainful employment for the statutory period. Once, however, a prima facie case that claimant cannot perform her usual work is made, the burden shifts to the Secretary to show that there is work in the national economy which she can perform. *Hephner v. Mathews,* 574 F.2d 359, 361 (6th Cir.1978); *Garrett v. Finch,* 436 F.2d 15, 18 (6th Cir.1970).

2. Convincing proof, consisting of lay testimony supported by clinical studies and medical evidence, that pain occasions a claimant's inability to perform his or her usual work is sufficient to make a prima facie case. *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir.1978); *Noe v. Weinberger,* 512 F.2d 588 (6th Cir.1975).

3. In determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim. *Whitson v. Finch,* 437 F.2d 728, 732 (6th Cir.1971); *see also Giddings v. Richardson,* 480 F.2d 652 (6th Cir.1973).

4. Substantiality of the evidence must be based upon the record taken as a whole. *Futernick v. Richardson,* 484 F.2d 647 (6th Cir.1973).

*Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). *Allen's* proposition that the reports of physicians who treated a patient over a period of time are to be accorded greater weight than are the physicians employed and paid by the government for the purpose of defending against a disability claim, has been confirmed time after time. *Harris v. Heckler,* 756 F.2d 431, 435 (6th

Cir.1985); *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 536 (6th Cir.1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). But the rule stands only if the treating physician's opinion is based on sufficient medical data. *See Garner*, 745 F.2d at 391; *Houston v. Secretary of Health & Human Services*, 736 F.2d 365, 367 (6th Cir.1984). Of course, the conclusions of a plaintiff's physician on the ultimate issue of disability are not binding on the Secretary. 20 C.F.R. § 404.1527 (1985).

■ In the instant case, Dr. Rubin, as plaintiff's treating physician, conducted a series of physical exams and observed plaintiff over a period of nine years; therefore, he was in a superior position to evaluate plaintiff's condition. A treating physician's opinion in such case may not be discounted when there exists supporting medical evidence. *See, e.g., Walston v. Gardner*, 381 F.2d 580, 585 (6th Cir.1967). Dr. Rubin's reasoned opinion, thus, that plaintiff was "effectively disabled," should have been given significant weight by the ALJ had he followed Sixth Circuit precedent.

■ Dr. Rubin's conclusion that plaintiff was disabled is buttressed by an evaluation performed by Dr. Roger Livingston, a vocational expert, on December 10, 1983. Dr. Livingston's report includes the results of the "Wide Range Achievement Test" that showed that plaintiff has a weakness in mathematical skills. According to Dr. Livingston, "[t]hese results clearly point out that Mr. Meyers's transferrability [sic] of skills in terms of skill level is seriously compromised and that the skills required for entry level occupational proficiency in skilled occupations that are unfamiliar to Mr. Meyers are absent" (tr. 156). Thus, given all of the medical information Dr. Livingston had before him, he concluded that plaintiff was "totally occupationally disabled at this time" (tr. 159). That the ALJ had no opportunity to "cross-examine" plaintiff's vocational expert in no way lessens his credibility as far as this Court is concerned (*see* doc. 17 p. 5). If the ALJ was concerned that Dr. Livingston's report on the subject of transferability in the instant case, he certainly was free to call his own expert. He cannot discount Dr. Livingston's expert opinion simply on the basis of his own lay opinion. Moreover, as *Allen* teaches, once plaintiff establishes a prima facie case that he is unable to perform his past relevant work, it is the Secretary's burden to put on evidence to demonstrate that there exists work that plaintiff can perform. 613 F.2d at 145.

■ In concluding that plaintiff had the RFC "to engage in jobs where he could be on his feet most of the workday, sit indefinitely, lift up to 50 pounds occasionally or lighter weights more often" (tr. 19), the ALJ rejected the opinion of a treating physician and instead relied on two non-examining physicians who reviewed the record for the Bureau of Disability Determination. As noted earlier, this Court has refused to find the government's position was "substantially justified" when the ALJ has failed to apply the correct legal standard. *See Howard v. Heckler*, 581 F.Supp. at 1231, 1233–34 (D.C.Ohio 1984). The ALJ's reliance on the reports of two non-examining physicians to the exclusion of the report of the treating physician, was clear error. Dr. Rubin's reports were corroborated adequately by other medical findings, and, in addition, were supported by plaintiff's own testimony as to his pain and limitations.

■ The ALJ's failure to evaluate the cumulative effects of plaintiff's impairments contributes to our award of EAJA fees in this case. It is settled law that a claimant may establish disability by proving the existence of a number of impairments, no one which is sufficiently disabling, but when taken together, equal or exceed what is required for a disability. *Hurst v. Schweiker*, 725 F.2d 53, 55–56 (6th Cir.1984). A claimant is "a human being whose total anatomy must be taken into account in determining whether or not he is disabled from any substantial gainful employment." *Barney v. Secretary of Health & Human Services*, 743 F.2d 448, 453 (6th Cir.1984); *see also* 20 C.F.R. § 404.1523 (1985).

The ALJ found that plaintiff's testimony as to the extreme severity and limiting effects of his symptoms were "clearly exaggerated, self-serving and out of all proportion to his objective medical condition," and therefore was neither persuasive nor credible (tr. 19). But pain alone can be the basis for a finding of disability if plaintiff's subjective claims are corroborated by some medical evidence. *See Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d at 383, 386 (6th Cir.1978); 20 C.F.R. § 404.1529 (1985). That evidence need not be "objective" evidence of disability. *Walters v. Gardner*, 397 F.2d 89, 91 (6th Cir.1968). Plaintiff's testimony about pain is not conclusive evidence of disability, but certainly is admissible in relation to his claim. *See Stamper v. Harris*, 650 F.2d 108, 110 (6th Cir.1981). The medical evidence before the ALJ established that plaintiff was suffering from degenerative joint disease of the lumbar and dorsal spines and of the right hand, chronic lumbosacral and lumbodorsal musculoligamentus strain, lumbar nerve root irritation, and a short left leg. At the hearing, plaintiff testified that, in an attempt to alleviate the pain, he uses an electric nerve stimulator that has been implanted into his body, takes whirlpool baths three times per day, has purchased a reclining chair equipped with both a heater and a vibrator, and regularly takes pain medication (tr. 39–42, 44–45). Because tolerance for pain is a highly individualized matter, a determination of disability based on pain depends largely on the credibility of the claimant. *Houston*, 736 F.2d at 367. The ALJ must determine the claimant's credibility, but cannot rely solely on his observation of the claimant during the hearing; and, the ALJ must cite some *other* evidence for denying a claim for pain in addition to personal observation. *Martin v. Secretary of Health & Human Services*, 735 F.2d 1008, 1010 (6th Cir.1984) (citing *Weaver v. Secretary of Health & Human*

*Services*, 722 F.2d 310, 312 (6th Cir.1983)). Permissible bases for the ALJ to justify dismissal of a claim for pain include evidence of plaintiff's activities and lack of supporting evidence. *See Gist v. Secretary of Health & Human Services*, 736 F.2d 352, 358 (6th Cir.1984). The ALJ relied on neither of these facts.

In this case, the ALJ applied improper legal standards by failing to give the requisite weight to the treating physician's testimony and also by failing to consider the cumulative effects of the plaintiff's impairments, including his pain. Accordingly, the government's position had no legal basis in law. Because we also found that the ALJ's conclusions had no reasonable basis in fact, we hold that the position of the United States was not substantially justified and that an award of fees under the EAJA is merited.

Although the Secretary opposes an award under the EAJA in general, she apparently quarrels not with the number of hours or rate of compensation requested (*see* doc. 17). Having reviewed the record, we conclude that the hours claimed by plaintiff's counsel were expended reasonably in this litigation and, furthermore, that the hourly rates requested are comparable to those that would have been charged by attorneys with similar qualifications. *See* 28 U.S.C. § 2412(d)(2)(A). We conclude that $1,530.00, representing 20.4 hours at $75.00 per hour, is a reasonable fee under all the circumstances.

Counsel, in addition to $1,395.00 under the EAJA, has asked this Court to award him $3,130.00 under section 406(b)(1). It appears that Mr. Mooney has devoted 43.4 hours in total to plaintiff's case,[6] that the Social Security Administration has withheld $3,912.50, representing twenty-five percent of plaintiff's past-due benefits out of which a fee award can be made, and that counsel and his client agreed that the former should be awarded

6. When we add counsel's hours, they yield a total of 42.10 rather than 43.4. Because we find the dollar figure requested to be eminently reasonable, we view the discrepancy to be of no concern.

Moreover, we would omit the time logged on May 16, 1985 (.8 hr) and 6/19/85 (.3 hr), but again, it makes no real difference in terms of the actual figure award of $3,130.00.

twenty percent, the figure requested herein, of the latter's past-due benefits if successful. The Secretary does not object to an award of $3,130.00 (doc. 19). For cause shown, we conclude that the fee requested, $3,130.00, is reasonable and should be awarded.

Accordingly, it is hereby Ordered that Michael J. Mooney, Esq. be awarded $1,530.00 under the EAJA. Upon receipt of said monies, they are to be forwarded immediately to his client Mr. Meyers, as they represent a reimbursement to plaintiff. It is further Ordered that Michael J. Mooney, Esq. be awarded $3,130.00 under section 406(b)(1). These monies, of course, are to be retained by him, as they are compensation for his services for successful representation in this cause.

SO ORDERED.